PATRICK CUFF *vs.* JANE A. DORLAND.

Where an agreement for the sale and purchase of land was very imperfect in its character, binding the vendor to sell the property at a fixed price, to be paid in installments to suit the purchaser; $5000 on delivery of the deed, and the balance at future periods, without providing for any mortgage or security for the purchase money, and without any time being fixed for the completion of the contract; and such agreement was drawn by the purchaser, to be signed by the vendor, a female, not versed in such matters, in the absence of any legal adviser, when she had been for a long time an invalid, confined to the house by sickness, in embarrassed circumstances, and urged to execute it by the purchaser; and she signed the same under a misapprehension of its contents, as to the terms of payment, supposing that the whole purchase money was to be paid in cash, instead of in installments at different periods; *Held* that the nature of the agreement, and the circumstances under which it was procured, fully justified a decision by the justice, at the trial, refusing to decree a specific performance.

55  481
61h 459
55b 481
151a 383
55b  481
70 AD 4 23
55b  481
78 AD 3 222

*Held, also,* that the terms of the agreement were not fair and just, and the circumstances under which it was executed were such as to render it very doubtful whether it was understood by the vendor, in such a way as to make a valid contract on her part, or at any rate, not so clearly so as to call for a decree of specific performance, even though no intended deception or fraud were imputed to the purchaser.

The rule is now well settled, that in actions brought for equitable relief, and tried before a judge, if there appears to be no ground for granting such relief, the court should retain the cause, and grant such legal relief as may be just.

Hence, although a judge refuses to decree a specific performance of a contract of sale, at the suit of the purchaser, yet he should retain the case for the purpose of awarding to he plaintiff the damages he is entitled to, for the non-performance.

APPEAL by the plaintiff from a judgment rendered at a special term, on a trial before Justice CLERKE, without a jury.

The action was brought for the specific performance of an agreement for the sale of real estate, which was as follows:

"For and in consideration of the sum of fifty dollars, paid to me in hand, Jane A. Dorland, of the city of New York, have sold to Patrick Cuff, of same place, all that lot of land situated and lying in the twenty-second ward of this city, known as follows: On the southeast corner of Fifty-fifth street and Eighth avenue, more or less, say seventy feet on Eighth avenue, and one hundred feet on Fifty-fifth street, for the sum of fifteen thousand five hundred dollars, ($15,500,) to be paid in installments to suit purchaser; say five thousand dollars on the delivery of deed, the balance to be paid in sums not more than two thousand five hundred dollars annually, until the same shall be paid in full, of ten thousand five hundred dollars.

New York, February 21st, 1866.

Signed in the presence of

Jane C. Dorland.     JANE A. DORLAND."

Acknowledged April 2, 1866.

The answer of the defendant alleged that the written instrument did not express her understanding of the agree-

Cuff *v.* Dorland.

ment, and that it was signed under a misconception of its contents, and was never acknowledged by her or proved by a subscribing witness, and that the recording of the same and the whole transaction was a gross fraud upon her. The answer also set up that the defendant was much embarrassed and in need of a sum of money in cash, and that the plaintiff knowing this fact, applied to her to become a purchaser of the lots; and by offering to assist and befriend her, and immediately to pay off some pressing liens upon her property, and by manifesting a deep personal interest in her behalf, induced her to sell the lots to him at a price less than she was then offered for them and could then sell them for. The answer further alleged, that immediately upon her having agreed to sell, the plaintiff drew up the contract, and she, without any opportunity to see her counsel, and being in feeble health and without advice or assistance, and relying on the plaintiff, signed the paper. That having obtained the contract the plaintiff failed to do as he had promised; did not pay off the incumbrances; and some of the property referred to in the answer was ordered to be sold in a foreclosure suit, and one portion was actually sold, and that she was put to great expense in procuring from other sources the money which her necessities demanded.

The following facts were found by the justice before whom the action was tried:

1. That on the 21st day of February, 1866, the defendant, being the owner of the three lots of land mentioned in the complaint, was induced by the plaintiff to execute a contract prepared by him, whereby she undertook to sell the said lots to him on the following terms, to wit, "for the sum of fifteen thousand five hundred dollars, to be paid by installments to suit the purchaser; say five thousand dollars on the delivery of the deed, the balance to be paid in sums not more than $2500 annually, until the same should be paid in full, of $10,500."

2. The defendant had been confined to her house an invalid for many years, living with no male friends or relatives, holding no intercourse with the world, in embarrassed circumstances, and depressed in mind, and executed the said contract by the inducement of the plaintiff on the spot, without deliberation, or consulting any friend or legal adviser.

3. The defendant signed the said contract under a *bona fide* misapprehension in a material point; as she understood that the whole purchase money was to be paid in cash, and supposed that the contract so stated.

4. That on the 14th day of July, 1866, the defendant entered into a contract, in writing, for the sale of said premises, with one Philip Fitzpatrick; that said agreement was executed after the commencement of this action, and after the filing of notice of pendency thereof in the office of the clerk of the city and county of New York, and made subject to the final result of this action.

5. That the plaintiff, in part performance of said agreement, paid to the defendant the said sum of $50, mentioned therein, which sum the said defendant accepted, and that at divers times after the execution and delivery of said agreement, and before the 13th day of June, 1866, the plaintiff, in part performance thereof, and at the request of the defendant, paid to her and to divers persons, for and on account of said defendant, divers sums of money, in all amounting to the sum of $377, exclusive of said sum of $50 paid to her on the delivery of said agreement; no part of which said sums of money the defendant has paid back, or offered to pay back, to the plaintiff.

The justice found the following as conclusions of law:

*First.* The contract which the plaintiff induced the defendant to sign is so objectionable in its terms, and in the circumstances under which it was procured, that a court of equity will not lend its peculiar and extraordinary jurisdiction to enforce it.

Cuff *v.* Dorland.

*Second.* That the defendant was entitled to have the complaint dismissed.

And judgment of dismissal, without costs, being entered, the plaintiff appealed

*F. Smyth,* for the appellant. I. There is no allegation, in the answer, of incompetency on the part of the defendant to make the contract in question, nor is there any proof to that effect.

II. Nor is there any allegation of inadequacy of price, nor any proof of inadequacy. Indeed the testimony shows the price to have been fair and reasonable.

III. Nor is there any allegation of fraud, misrepresentation or deception of any kind; and the testimony shows the very reverse.

IV. The only defense set up in the answer, or relied on by the defendant, is " that the agreement did not contain or express her understanding with the plaintiff, and was signed by her under an entire misconception of its contents and character;" which " misconception" as it appears by the course taken by the defendant on the trial consisted in a "mistake" in the contract, in not stating that the whole price was to be paid in cash, instead of part, viz., $5000 in cash, and the residue in subsequent payments. The averment and the defense substantially are, that the contract was signed by the defendant by mistake, and the mistake being in the particular just mentioned. 1. The testimony does not show any mistake, but the contrary. (*a.*) The defendant acknowledged the execution of the contract before a commissioner, the 2d of April, 1866. (*b.*) She repeatedly received payments on it from the plaintiff. (*c.*) She requested the plaintiff to pay in cash, as a favor, $3500 beyond the $5000 stipulated in the contract; and she was aware of the efforts. made, and of the expense incurred by him in endeavors to obtain the money. (*d.*) In performance of the contract she tendered him a

deed; although the tender was not effective as a legal tender, (as appears by the testimony,) still it is a most solemn and unequivocal admission by the defendant that the contract was not invalid by reason of mistake or otherwise. (*e.*) These repeated acts of part performance by the plaintiff, and acceptance by the defendant, preclude her from the defense she sets up. (*f.*) It is fully proved that the agreement was read to the defendant before she signed it; her intelligence and intellectual capacity are not denied; it cannot be, then, that she was under any "mistake." (*g.*) In her agreement with Fitzpatrick she makes that agreement subject to this. 2. The alleged mistake, if it existed, was not material; whether the $10,500 was to be paid in cash, or in future installments of $2500 each, secured on the premises, was not a matter of sufficient importance to render null the contract on the ground of mistake, even if it were clearly shown that the defendant signed it under a mistake in this particular. 3. A contract cannot be set aside on the ground of mistake merely, (as attempted in this case,) unless the mistake is mutual—the mistake of both parties. A party alleging mistake in a contract must show it, and make it out clearly and by satisfactory proofs. He must also show that the part omitted or inserted was omitted or inserted contrary to the intent of both parties, or under a mutual mistake. (*Nevins* v. *Dunlap*, 33 *N. Y. Rep.* 676, *and cases cited.* 1 *Story's Eq.* §§ 146, 152, 153, 157. *Parks* v. *Johnson*, 4 *Allen's* [*Mass.*] *Rep.* 259. *Lanier* v. *Wyman*, 5 *Rob.* 147.)

V. The plaintiff, in all respects, performed on his part; indeed it is not pretended in the answer that he did not perform or duly tender performance of the contract stated in the complaint. The only allegation is that he did not perform another and a different contract—one which he never entered into.

VI. The proof shows that the contract was in all respects fairly and intelligently entered into by the defendant. In-

Cuff v. Dorland.

deed the judge says: "There was no unfairness on the plaintiff's part; he was rather solicited to buy; he acted in a very fair, candid and open way."

VII. The contract sought to be enforced is in writing, being certain in its terms and fair in all its parts, and for an adequate consideration, and capable of being performed. The plaintiff was entitled to a decree in his favor. (*Story's Eq.* § 751, *ed. of* 1866.) And although a decree for specific performance is within the discretion of the court, it is not an arbitrary discretion, but a discretion regulated by the principles which have been established by the decisions, and in a case coming within these the court is bound to decree specific performance. (*Bowen* v. *Irish Presb. Church*, 6 *Bosw.* 245, 268. *Hall* v. *Warren*, 9 *Vesey*, 608.) There would be no safety in written contracts of any kind, if this defendant can relieve herself of this contract under the pleadings and proofs in this action.

VIII. Time was not of the essence of the contract in question; and even if it was, equity would enforce it in many cases. (*Stevenson* v. *Maxwell*, 2 *N. Y. Rep.* 408, 415. *Burd* v. *Tilson*, 25 *id.* 195. *Park* v. *Johnson*, 4 *Allen's* [*Mass.*] *Rep.* 295.)

*John E. Burrill*, for the respondent. I. An action for specific performance is addressed to the sound discretion of the court, and the court will not grant a decree in such action unless the contract be fair, just and reasonable, and free from all fraud or improper conduct. (*Gale* v. *Archer*, 42 *Barb.* 320. *Lynch* v. *Bischoff*, 15 *Abb. Pr.* 357. *Slocum* v. *Closson*, 1 *How. App. Cases*, 705, 751.)

II. It is not necessary for the defendant to show that she has been defrauded or intentionally imposed upon; but it is sufficient if she misunderstood the contract, misapprehended its provisions, and did not correctly understand its force or effect at the time of the execution. If the court, from all the circumstances, came to the conclu-

sion that, if she had correctly understood its provisions, she would not have executed the contract, or that she signed it under a misapprehension of its contents, force or effect, and that she was influenced to sign it by the protestations of friendship made by Cuff, or that for any reason she ought not to be compelled to execute it, the court will not decree a specific performance.

III. The circumstances in which this lady was placed—her protracted illness, which produced great physical debility, her solitary condition, without friends to aid or advise her in the management of her affairs, her pecuniary embarrassments, arising from her inability to pay the interest upon her mortgages, and her anxiety in regard to herself and her sister, were entitled to great consideration in disposing of these questions. Whether any advantage was taken of her condition or not, it is evident that in her then physical condition, produced by long illness, and her mental condition disturbed by her pecuniary embarrassments and great anxiety, she was not in a condition to take care of her own interests, or deal with a designing or plausible man.

IV. The circumstances immediately connected with the execution of the paper show the dishonesty of the plaintiff. 1. The contract was drawn by the plaintiff, and if it was read over to her by the plaintiff, it was read, as we allege, incorrectly. 2. The defendant had no legal adviser, and there was a design on the part of the plaintiff that she should not consult with any one. 3. No effort was made to secure the presence of counsel for her. On the contrary, the plaintiff objected to the calling of Mr. Prudens, who lived in the same house. 4. It was known that Marshman was in the next room, and he was not called in. 5. The plaintiff desired that there should be secrecy, and instructed the defendant, if asked who bought it, to say Peter Cummings—a fictitious name. 6. When the defendant was negotiating with Pulvermacher to sell the lots

at $16,000, the plaintiff shook his head at the defendant, to indicate to her that she was not to negotiate with him. 7. The contract was signed by the defendant when she was alone with Cuff; and her daughter, who was in the next room, was not called in until after the paper had been signed by her mother; and it was Cuff, and not the defendant, who then asked her to sign it. 8. After the contract was executed, no copy was furnished to her or to her counsel, and Mr. Vernon was not able to get an inspection of it until the 13th April, when it was recorded, nearly two months after it was executed.

V. The peculiarities in regard to the contract are important to be considered. 1. The contract, as drawn, contains no obligation on the part of the plaintiff to perform, is without mutuality, and could not be enforced against him. 2. It is not executed by the plaintiff, nor was any counterpart of it given to her. 3. No time is provided for the delivery of the deed, although it is apparent from the evidence that the defendant's interest required that the sale should be consummated at once. 4. The character of the deed is not mentioned, and no provision made in regard to incumbrances, and no provision made to secure interest. 5. No provision in regard to stamps. 6. The provision allowing a payment of the balance in installments is unusual, and advantageous only to the plaintiff. 7. An inspection of the paper shows that it has been altered since it was prepared and signed, or that Cuff's story in regard to it is untrue. (*a.*) In regard to the figures $2500, which, from the difference in the ink, were evidently inserted at a different time. (*b.*) The insertion of the words at the commencement of the contract.

VI. In regard to the price agreed to be paid for the property. 1. Aside from the question whether the consideration was or not adequate, it is evident that the defendant did not understand that any part of the price was

to be left on mortgage, but she understood that it was to be paid in cash. (*a.*) Mrs. Dorland testifies to this positively. (*b.*) Miss Dorland says that from the way in which Cuff read the contract, she understood that the whole purchase was to be paid in cash. (*c.*) Vernon says that he understood from Mrs. Dorland that it was all to be paid in cash, and that he never heard anything about a mortgage from Mrs. Dorland, nor until he had read the contract at the register's office. (*d.*) Other witnesses say that Mrs. Dorland represented it to them as a cash transaction. (*e.*) In addition, it is also proved that in all previous negotiations the defendant had always insisted on the purchase money being paid in cash. (*f.*) Again, the pecuniary embarrassments of the defendant, and her necessities, required that the purchase money should be paid in cash, and the probabilities are greatly in favor of the truth of her assertion that she understood this offer to be a cash offer. 2. The evidence shows that the lots were worth more than the price in the contract. (*a.*) This is virtually conceded by the plaintiff. (*b.*) It is proved by the fact that Marshman had offered $16,000, and was prepared to offer $17,000, and went there for that purpose. (*c.*) It is proved by the fact that Pulvermacher offered $16,000, and that both these parties represented respectable men, who were able and willing to purchase and pay for the property. (*d.*) The fact that the property was actually sold to Fitzpatrick in June, 1866, about three months after the contract, for $18,000. (*e.*) Cuff himself authorized Marshman to sell the property on his account, and the price he asked was $18,000. (*f.*) Mitchell, the owner of the adjacent lots, valued these lots at over $18,000, making allowance for difference in size between these and full lots, and for excavations. (*g.*) The lots at the Hegeman sale (proved by Mr. Robinson, the referee,) situated a short distance above these, produced $26,600, which, making same allowances, would bring these lots to about $20,000.

(*h.*) This evidence of the actual sales of lots is more reliable than the opinions of witnesses in regard to value, which opinions are always widely different. (*i.*) No one pretends, not even Cuff, that the lots were not worth more than the price which he agreed to pay for them, and his efforts to compel the defendant to perform this contract specifically, show that he knows the value of the lots.

VII. Cuff exercised great influence over the defendant, and by his protestations of friendship and promises, which he wholly failed to carry out, succeeded in getting her to sell him this property at a price less than its worth, and less than she had actually been offered for it. 1. The price he agreed to pay was $15,500, and she had been offered and had refused $16,000, and her asking price when he applied was $18,000. 2. Cuff admits that she told him that she would let him have the property for $500 or $1000 cheaper than any one else. 3. It is not to be supposed that this was done by the defendant as a gratuity, or as an evidence of good feeling towards Cuff. 4. The only inducement was that he professed good friendship for her; undertook to advance money enough immediately to pay off all the unpaid interest, &c., to aid her in the management of her affairs, and agreed to render her in this way services worth $500 to $1000. This is more probable than Cuff's statement, that she gratuitously sold him her lots $1000 less than she had been offered. 5. Cuff gave the defendant to understand, even if he did not expressly promise, that he would render her services to the amount of this difference. 6. The defendant furnished Cuff with a list of the various items of debts for interest, taxes, &c., which it was necessary for her to pay, and which he, Cuff, agreed to pay at once.

VIII. The pretense set up by Cuff, that after the contract in question was made, it was varied by a parol agreement, by which Cuff agreed to pay an additional $3500 in cash, making $8500 in cash—and in consideration of that,

Mrs. Dorland agreed to take a second mortgage—is not sustained by the evidence. 1. As an effort to vary the written contract by a parol contract, this failed. 2. If it was offered as evidence to show a recognition by Mrs. Dorland of the original agreement, it also failed. (a.) It was denied absolutely by Mrs. Dorland. (b.) Mr. Vernon never heard of any such arrangement, nor did Miss Dorland, nor any one connected with the defendant.

.IX. The acknowledgment of the contract, alleged to have been made on the 2d of April, by the defendant before Lang, the notary, was never made by the defendant knowingly, and if Lang ever went there to take it he did not go on the 2d of April, but at a much later period. 1. The acknowledgment was not filled up by Lang but was prepared by Cuff's attorney, leaving a blank for date and for signature. 2. The memorandum in the diary of Lang was made before the 2d of April, as he says, and therefore furnishes no evidence that he went there on that day.

X. The length of time which elapsed between the contract and the alleged tender. The rule of law is laid down 'in 42 Barb. 320, and other cases there referred to. 1. Here the circumstances show that it was the understanding of the defendant that the contract was to be closed as soon as the title could be examined. 2. The title was completed and the papers ready, as testified to by Mr. Banta, about the 1st of April, and the deed was presented to the defendant to execute, and she refused. 3. This refusal was communicated by Mr. Vernon to the plaintiff and his counsel almost immediately thereafter, and certainly on or before the 13th of April. 4. Mr. Vernon states that he declined to negotiate with Cuff, on the basis of this agreement, after the 14th of April, and that whatever took place after that was entirely independent of it. 5. That the subsequent negotiations were outside of the contract, is shown by the fact that Cuff offered $500

more money. 6. It is distinctly proved by Mr. Vernon and Mrs. Place, that the defendant refused to accept a second mortgage on these lots, or any other lots, and that this refusal was communicated on or before the 14th of April. 7. Mr. Vernon, in order to put an end to all claims under the contract, tendered the deed on the 14th day of April, he at the time, however, supposing that the whole was to be paid in cash. 8. The plaintiff certainly knew at that time that the defendant had taken her stand in regard to this matter, and if he intended to perform it, he should then have made a tender and offered to perform; but instead of that, he waited until the 13th of June. 9. The truth is, that after Cuff had made this contract he found himself unable to perform it, and that he then set to work to induce the defendant to make changes and modifications, to which she invariably refused to assent. All these offers were made by Cuff. Vernon says that none originated with Mrs. Dorland, but that Cuff kept making new propositions. It cannot be that a party in default can excuse the default, by making some efforts to induce the opposite party to waive it and grant indulgence. 10. Mr. Vernon states that Cuff told him that he was prevented from carrying out this contract, because he had expended his means in purchasing another piece of property in Thirty-eighth street; and although Cuff denies this, it is remarkable that Cuff is proved to have purchased a property in Thirty-eighth street at this very time; and if Mr. Vernon's statements be not correct, it certainly is a wonderful coincidence.

XI. Cuff, fully aware that he had obtained a great advantage over the defendant, determined to get these lots, and resorted to various plans. 1. He attempted to coax the defendant into giving the deed, by offering to divide with her if he should get $20,000 for the lots. 2. He attempted then to induce her counsel, Mr. Vernon, to betray his trusts, on the promise of Cuff that he would make it

right. 3. He then resorted to threats that he would law it as long as he had a cent, and that he would have these lots even if he could buy all the lots between there and Fourteenth street for half price.

XII. Cuff wholly failed to fulfill his promises to Mrs. Dorland, which were a great inducement to the making of the contract.

XIII. In conclusion we submit—1. That both the circumstances under which the contract was procured, and the nature of the contract, are such as to preclude the plaintiff from a judgment for specific performance. 2. That there has never been any bona fide intention on the part of the plaintiff to carry it out. 3. That he was, in fact, unable to fulfill his promise, and thereupon commenced his attempts to induce the defendant to change the contract to meet his views. 4. That finally finding that the defendant refused to be imposed upon he made a tender, knowing that he had forfeited his rights to a performance of the contract, and without the slightest idea that she would accept it. 5. The whole proceeding is a speculation to make profit out of this lady, who in her enfeebled and dependent condition was unable to protect her interests.

*By the Court,* INGRAHAM, P. J. The plaintiff asks for a decree for specific performance of an agreement to sell some land on Fifty-fifth street and 8th avenue, in the city of New York. The court gave judgment for the defendant, from which judgment the plaintiff appeals.

The agreement on which this action was founded is very imperfect in its character. It binds the defendant to sell the property at a fixed price, to be paid in installments to suit the purchaser; $5000 on delivery of the deed, and the balance in installments, without providing for any mortgage or security for the purchase money, and

without any time being fixed for the completion of the contract.

The circumstances under which the contract was executed were not of a character to call for its enforcement by the court. It was drawn by the plaintiff, to be signed by the defendant, a female not versed in such matters, in the absence of any legal adviser, when she had been for a long while an invalid, confined to the house by sickness, in embarrassed circumstances, and urged to execute it by the plaintiff. The defendant also signed the contract under a misapprehension of its contents, as to the terms of payment, as she understood that the whole purchase money was to be paid in cash. These are the findings of the court, upon the evidence.

It also is in proof that the plaintiff had applied to the savings bank to obtain a loan on the property for less than the amount to be paid, and this fact strengthens the supposition naturally drawn from the contract, that he did not contemplate giving any security to the defendant for any installments that would come due after the delivery of the deed.

In addition to these facts, the mode in which the acknowledgment by the defendant was obtained, the unexplained difficulty as to the date, and the strong contradictory evidence as to the fact of any acknowledgment having been made by the defendant, throw great doubt on the *bona fides* of the whole proceeding.

Added to these facts, the delay on the part of the plaintiff between the making of the contract and making the tender, shows that the object of the plaintiff was merely to use the contract for the purpose of a speculation in selling the lots, if an opportunity offered.

The statement of these several matters, connected with this alleged contract, we think fully justifies the decision of the justice before whom the case was tried, in refusing to decree specific performance. The terms were not fair

and just, and the circumstances under which it was executed were such as to render it very doubtful whether it was understood by the defendant in such a way as to make it a valid contract on her part, or at any rate not so clearly, as to call for a decree of specific performance, even though the court do not impute to the purchaser any intended deception or fraud.

But it seems to me that the justice who tried this case, while he refused to decree specific performance, should have retained the case for the purpose of awarding to the plaintiff the damages he was entitled to for the non-performance. The rule is now well settled that in actions brought for equitable relief and tried before a judge, if there appears to be no ground for granting such relief, the court should retain the cause and grant such legal relief as may be just. (*Marquat* v. *Marquat,* 12 *N. Y. Rep.* 336. *Central Ins. Co.* v. *Protection Ins. Co.,* 14 *id.* 85. *Despard* v. *Walbridge,* 15 *id.* 374. *N. Y. Ice Co.* v. *Northwestern Ins. Co.,* 23 *id.* 357. *Phillips* v. *Gorham,* 17 *id.* 270.)

In the *N. Y. Ice Co.* v. *Northwestern Ins. Co.,* (*supra,*) The chief justice says: "It was erroneous to turn the plaintiff out of court on the mere ground that he had not entitled himself to the equitable relief demanded, if there was enough of his case to entitle him to recover," &c.

The plaintiff alleges in his complaint that he paid $50 on signing the contract, and that he has since paid other sums, amounting to $377, making in all $427, which, if the contract is not performed, he is entitled to recover from the defendant, with interest from the dates of payment.

The plaintiff proved that the price he was to pay for the lots was a full price for them, and none of the witnesses state any increase in value; there is no other damage, therefore, proven.

The judgment for the defendant should be reversed, and judgment ordered for the plaintiff for $427 and interest from the dates of payment.

If the parties do not agree on the amount, the judgment is opened and the case referred to Thomas W. Clerke, Esq., to take proof as to the amount the plaintiff is entitled to recover, and report thereon, with his opinion.

[NEW YORK GENERAL TERM, January 3, 1870. *Ingraham, Geo. G. Barnard* and *Brady*, Justices.]