CAROLINE DAVISON, TRUSTEE, ETC., RESPONDENT, *v.* THE ASSOCIATES OF THE JERSEY COMPANY, APPELLANTS.

*Contract for sale of land — default — what amounts to rescission of — specific performance.*

Where, by the terms of a contract for the sale of land, the vendor is to deliver the deed on a certain day, and the vendee is then to deliver a mortgage thereon for a specified sum, and before the appointed time the vendor notifies the vendee of his readiness to deliver the deed, and after that day tenders the deed and demands the mortgage, with which demand the vendee refuses to comply, without assigning any sufficient reason therefor, such refusal amounts to a rescission of the contract on his part, and the vendor may thereafter lawfully sell the land to another person.

*Quære*, whether, after the vendor has sold the land, the court will retain an action, brought by the vendee, for specific performance, in order to award him damages for the breach of the contract.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee, in an action brought for the specific performance of a contract.

*Edgar S. Van Winkle*, for the appellant.

*E. F. Bullard*, for the respondent.

LEARNED, P. J.:

This action arises upon a contract between one Erastus Davison and the defendants. The plaintiff obtains title to the rights of Erastus Davison through proceedings supplementary, and a sale by the receiver appointed under the same.

An agreement had been made between Erastus Davison and the defendants, in May, 1858; but on the 8th of December, 1858, another agreement was made between the parties. This put an end to the former agreement. And the referee correctly holds that this latter agreement is the only one subsisting between Erastus Davison and the defendants, under or by force of which the plaintiff can claim any legal or equitable relief.

This agreement recites an agreement of even date, by which Davison was to build five buildings for the associates, which were

to be completed on or before May 1, 1859, and then binds the associates, on the completion of the buildings according to the contract, to convey the tract of land on which they are to be built to Davison for $22,880, to be paid by five separate bonds and mortgages of Davison on the several lots, to that amount in the aggregate. The latter part of the agreement contains a clause that the building is to be completed and the bonds and mortgages given, on or before August 1, 1859, or the agreement and the building contract shall be void, at the option of the associates, as against them.

The referee finds that Davison had substantially finished said buildings on or about May 1, 1859.

On the 23d day of July, 1859, the defendants served a notice in writing on Davison, notifying him that they had executed and were ready to deliver a conveyance, in pursuance of the aforesaid agreement.

They had previously executed such conveyance and had it ready for delivery; and, on the 11th day of August, 1859, the defendants tendered such a conveyance to Davison and demanded of him the bonds and mortgages provided for in the agreement; and Davison refused to execute and deliver the bonds and mortgages, and did not and would not receive the deed.

On the 23d of May, 1859, Davison notified the defendants that he had finished the work, and demanded payment.

On the 29th of July, 1859, Davison notified the defendants that he demanded a deed, and that he had executed bonds and mortgages. On the day following Davison tendered to the defendants a deed for their execution. He also tendered to them five bonds and mortgages. But these bonds and mortgages were expressed to be to secure sums considerably larger than the sums provided for in the agreement.

The defendants refused to receive these bonds and mortgages or to have the deeds executed.

It might seem strange that the defendants declined to accept bonds and mortgages for a *larger* amount than specified in the agreement. But it was explained, on the argument, that Davison claimed that the defendants ought to advance to him the amount in which these mortgages were in excess of those provided for in the agreement. After Davison refused to. accept the deed, the

buildings remained unoccupied, partially open, and to some extent unfinished, till, in March, 1860, the defendants sold them for $24,400.

In July, 1864, this action was commenced for specific performance of the agreement. The referee gave damages for its breach.

The referee holds that Davison, by failing to tender to defendants, on or before August 1, 1859, the bonds and mortgages, afforded defendants a justification for declaring the agreement void.

That the defendants, by tendering Davison a deed after August 1st, 1859, waived his previous defaults.

That by reason of their failure to give Davison notice of their intention to consider the agreement void, they remained liable to make specific performance until the lots were sold.

It is important to observe that no payment has ever been made by Davison on this purchase. The whole purchase-money was to be secured by the bonds and mortgages.

It appears, then, according to the finding of the referee, that the defendants were not in default at the time when they tendered their deed on the 11th of August, 1859. That is; there had been no demand of them, accompanied by a tender of the proper mortgages.

On that day, then, they offered to perform the agreement; tendered a deed and demanded the bonds and mortgage; and Davison refused to accept the deed, or to give the bonds and mortgages. The referee finds nothing as to the reason of such refusal, and there is nothing in the evidence which makes this in any way a qualified refusal. The ground of refusal appears to have been a claim of Davison in respect to certain moneys received from the (so called) Demeure mortgages. This claim the plaintiff abandoned by stipulation in this action; and the facts found by the referee show that it was groundless.

We have, then, the case of a tender of performance on the part of the vendor, and of an absolute refusal on the part of the purchaser, without any reason for such refusal, and without any qualification.

In the case of *Hubbell* v. *Von Schoening* (49 N. Y., 326), where the court held that a party was excused for neglect to perform, it

was said that the defendants had not put the plaintiffs in default by an offer and demand of performance.

In *Ketchum* v. *Evertson* (13 Johns., 359), it is decided that a person who has advanced money in part performance of a contract, but refuses to proceed (the other party being ready to perform), cannot recover back the money. After such refusal by the vendee, the vendor is at liberty to sell the land to another. Judge SPENCER says: "The plaintiffs cannot, by their own wrongful act, impose on defendant the necessity of retaining property which his exigencies may require him to sell."

In *Page* v. *McDonnell* (55 N. Y., 299), it is said: "The defendants were ready, and tendered full performance on their part. The plaintiff neglected and refused to perform on his part, for which reason the contract was terminated by the defendants. Under these facts the plaintiff is not entitled to recover the money he had paid thereon." In that case it is stated that the defendant told the plaintiff he must accept the deed and complete the purchase, or he would put an end to the contract. But the reason why it became important, that the defendant should make that announcement, was this: The plaintiff made a specific objection that there were certain incumbrances which should be removed. If the defendant had not insisted on the completion of the purchase then, it might have been claimed that he admitted his liability to remove the incumbrances; an act which could not be done at that moment. In the present case, the tender of the deed and the demand for the bonds and mortgages made it necessary for Davison to accept or to refuse on the spot, unless he had asked for some reasonable delay. This he did not do. His refusal was absolute. What more was necessary? Of what avail would it be for the defendants to tell him, that they should consider the agreement of December eighth void? If he had not broken the agreement, nothing which they could state to him would relieve them from its objection. If he had, they were relieved; unless they chose to waive his breach of the agreement.

It is true that every neglect to perform by the party does not amount to a rescission by him. But a tender by the one party, and a refusal by the other to perform the contract, unexcused, must be a rescission by the latter. (*Monroe* v. *Reynolds*, 47 Barb., 574.)

Furthermore, Davison was fully notified by the defendants that

they treated the contract as rescinded. He knew of their intended sale of the property. He was present at the time advertised for the sale. If he desired to perform the contract, which he then knew that the defendants treated as rescinded by him, he might have offered performance, for the premises were not, in fact, sold, until more than a month afterwards. That he made no such offer shows at least that his refusal to perform according to the terms of the contract was absolute, and, perhaps, indicates a want of good faith.

Treating this action as one for specific performance, which is the demand of the complaint, it is liable to the objection that there has been too much delay. After the defendants sold the property, four years and more elapsed before this suit was commenced. "A party cannot call for specific performance unless he has shown himself desirous, prompt and eager." (See *Delavan* v. *Duncan*, 49 N. Y., 485.)

Indeed, as the defendants had sold the land before the action had commenced, such relief could not be granted. Whether the court could retain the action for the purpose of giving damages, thus depriving defendants of their absolute right to a jury trial, we need not decide. (Code, 253; *Morss* v. *Elmendorf*, 11 Paige, 277; *Barnes* v. *Quigley*, 59 N. Y., 265; *Cuff* v. *Dorland*, 55 Barb., 481.)

We think the judgment should be reversed, and a new trial granted, costs to abide the event. The reference should be discharged.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Ordered accordingly.