## ANDERSON *vs*. SHERWOOD.

As a general rule, a purchaser of chattels, in order to recover damages for the
non-delivery of the property by the vendor pursuant to the contract, must
show either a tender of the purchase price, or that he was ready to pay it
when he made the demand; especially where there is a mere failure to per-
form, on the part of the vendor. But where the vendor *refuses* to deliver the
property when it is demanded of him, the purchaser is not bound to tender
or offer the money to him.

THE action was brought before a justice of the peace, to
recover damages against the defendant for not deliver-
ing a quantity of wheat to the plaintiff pursuant to con-
tract. The justice rendered a judgment in favor of the
plaintiff for $30 damages, together with costs.

The defendant appealed to the county court of Onondaga
county, and the judgment of the justice was affirmed with
costs, and the defendant brought his appeal to this court.

*Gray & Clark*, for the appellant.

*Sedgwick, Andrews & Kennedy*, for the respondent.

*By the Court*, FOSTER, J. The plaintiff complained that
on or about the 30th of June, 1864, he purchased of the
defendant one hundred bushels of wheat at fifteen shillings
per bushel, and paid him $10 towards the same to bind the
bargain; and that the plaintiff was to draw the wheat for
a reasonable compensation. That on or about the 10th of
July, thereafter, he went to the defendant's house with his
team, to get a load of wheat, and that the defendant re-
fused to let him have it, and that the wheat was then
worth $2.50 per bushel.

The defendant, in his answer, denied the allegations of
the complaint, and claimed that the plaintiff had broken
the contract; and he then and there tendered the $10 to
the plaintiff, and paid the same into court.

The witnesses to prove the contract were the parties

themselves; and there was considerable conflict in their testimony; but the justice having found in favor of the plaintiff, we are bound to adopt the evidence which was most favorable to his claim. The plaintiff testified as follows: " My business is milling; I buy wheat for the purpose of flouring, and carrying flour to market; on the 23d or 24th of June last I bought one hundred bushels of winter wheat, or more, of the defendant, at fifteen shillings per bushel; I bought all defendant had, at that price; we estimated what wheat defendant had at one hundred bushels or more; defendant thought there would be one hundred bushels at least; I thought there would be more. I paid defendant $10 on the purchase; defendant was to deliver the wheat at my mill in Jamesville; that was the contract I made with him; defendant asked me if fifteen shillings was the market price; I told defendant I thought it was the highest market price; after I made the contract with defendant I went to defendant's house to get a drink of water; I then went back to the barn where defendant was; I told defendant that perhaps he had so much to do, I might draw some of the wheat; defendant asked me what I would ask a load to draw it; I told defendant that I thought I would draw it for $2 a load; defendant said he could not afford to give $2 a load; defendant said that Thomas Cutt and Isaac Van Schaick drew forty bushels for $1 per load, last fall; I told defendant that perhaps I might draw a little cheaper, when my team was at liberty; I told defendant that my team had been drawing stone; perhaps they would be at liberty to draw some of the wheat on next Saturday or Monday; the next Monday morning defendant came over here, and said that he thought there was a misunderstanding in the contract of the wheat; I asked defendant what misunderstanding there could be in the contract; defendant said that wheat was worth more, when I bought it, than I paid him for the wheat; I told defendant I did not know of any one

paying more than fifteen shillings per bushel for wheat; defendant wanted me to take the money back I had paid him; I told defendant that I did not want the money, I wanted the wheat; defendant then wanted to know when I would come and get the wheat; I told him I could not exactly tell him when I could come; defendant wanted to know if would come and get it that week; I told defendant that I had some cars to load with stone, I did not know whether I would or not; defendant then said he wished to know when I would come; I told defendant I could not tell when I could go and get it; I had some wheat on hand and I was receiving some every day on other contracts; that was all of the conversation at that time. About the middle of July, 1864, I went after a load of wheat with my team; I got to defendant's house about six o'clock A. M.; defendant was out raking barley; I drove up to the fence; I told defendant that I had come after a load of that wheat; defendant said that he had not got time to bother with the wheat this morning; I told defendant that it would not take long to clean up a load of wheat; I told defendant that if he would deduct enough off the wheat I would take it as it was—I would not bother him about cleaning it up; the wheat was just as it came from the threshing machine; defendant said he would not let it go so, we could not get at it; I told defendant there was no difficulty about that if we only thought so; defendant said he would not let me have but fifty bushels of wheat, unless I would take the spring wheat; I told defendant I should not take the spring wheat, as I never agreed to take the spring wheat. I told defendant, on the start, I would not buy his spring wheat, as I did not grind it; defendant said he never sold me the wheat; I asked defendant if he was going to let me have the wheat; defendant said he would let me have fifty bushels of it; I told defendant I would not take fifty bushels unless I took the whole that I had

Anderson *v.* Sherwood.

bought; I told defendant I would have the wheat or something equivalent to the wheat; I then drove off."

It was proved by other witnesses that at the time the defendant refused to let the plaintiff have the wheat, it was worth about $2.50 per bushel, and that it was then in the defendant's barn.

It seems to me that the only question in the case, upon this evidence, is whether the plaintiff ought also to have shown either a tender of the purchase price of the wheat, or that he was ready to pay it, when he made the demand.

As a general rule, the purchaser must do so; especially where there is a mere failure to perform, on the part of the vendor; as where he is not present at the time or place for delivery; but in this case the defendant refused to deliver when it was demanded of him; and I think in such case the plaintiff was not bound to tender, or offer the money to him.

Such is the rule as laid down by this court in *Crist* v. *Armour*, (34 *Barb.* 378,) in a case where the vendor, prior to the time for delivery, gave the vendee notice that he should not perform the contract. And upon the same principle, if he, at the time for performance, refuses to perform upon other grounds than non-performance on the part of the purchaser, it dispenses with any further performance on his part.

I think the judgment should be affirmed.

Judgment affirmed.

[ONONDAGA GENERAL TERM, April 3, 1866. *Bacon, Foster* and *Mullin,* Justices.]