## Monroe vs. Reynolds & Upton.

If a vendor of chattels, when the period for performance arrives, is ready to perform and offers to perform on his part, and the purchaser neglects and refuses to perform, on his part, either because he has not the ability, or the price of the article bargained for has declined in the market, or for any other reason, the latter can not recover back the partial payments he has made in advance, or from time to time, even though the vendor has afterwards disposed of the article bargained for.

In such a case the contract is broken and rescinded, by the purchaser, and he can have no redress, either to recover damages for its nonperformance by the vendor, or to recover back partial payments made in part performance.

The seller has the right to treat the contract as at an end by the wrongful act of the purchaser, and to deal with the subject of the contract, and dispose of it, as though no bargain had ever been made, without any liability whatever to the purchaser.

But it is not every breach of a contract which will amount to a rescision of it by the party in default, so as to authorize the other party to treat it as abandoned by the party so in default. If the alleged breach be not such as to amount to a rescission by the defaulting party, and the vendor takes advantage of it, and disposes of the subject of the contract, to another, without any demand or offer of performance of his part, and without notice to the other party, he may be treated as wrongfully rescinding the contract on his part; and the law will then give the other party a right of action to recover back what has been paid in part performance.

The mere neglect to perform by the day specified is not such a breach by the defaulting party as to authorize the other party to treat the contract as rescinded, by such defaulting party, or abandoned.

The vendor, if he wishes to have the contract either performed or abandoned, must go further, and by some demand, offer on his part or notice, put the purchaser to his refusal to perform, before he can treat the contract as having been rescinded by the purchaser.

The plaintiff contracted to purchase of the defendants one hundred barrels of whisky, at $1.75 per gallon, and paid on such contract, $1000. The whisky was to be carried by the defendants for thirty days. The balance of the purchase money not having been paid for more than a month after the expiration of the thirty days, the whiskey was sold by the defendants, or on their account, at a large loss. In an action by the plaintiff to recover back the $1000 paid by him; *Held* that the case turned wholly upon the question as to which of the contracting parties first broke and rescinded the contract; and that the evidence upon this question being conflicting, the court could not properly nonsuit the plaintiff, but the case should have gone to the jury.

*Held, also*, that if the plaintiff rescinded the contract, the defendants had the right to sell without notice, the same as though no bargain had ever been

made. That on the other hand, if while the contract was subsisting and in full force, the defendants, without any offer or notice to the plaintiffs, sold the whisky, or caused or allowed it to be sold, to other persons, the contract was broken and rescinded by them, and the action was well brought. And that in such a case it was not necessary for the plaintiff to prove any tender, or offer to pay, the purchase price.

THIS action was brought to recover $1000 which the plaintiff had paid to the defendants on a purchase of one hundred barrels of whisky. The money was paid and the following receipt was taken by the plaintiff:

"Received, Rochester, June 25th, 1864, from M. J. Monroe, one thousand dollars to apply on purchase, one hundred bbls. western whisky, above to be carried thirty days. $1000. UPTON & REYNOLDS."

There was no testimony tending to show that the whisky was ever in fact delivered, or a delivery tendered by the defendants, nor any demand made for the whisky and offer to pay the balance of the purchase money by the plaintiff. But the plaintiff did demand the inspector's returns, (which the defendants were to furnish and which were to determine the quantity of whisky,) soon after the purchase, and the defendants refused or neglected to furnish them, and never in fact did so. Afterwards, as appears by the defendant Reynolds' testimony, the whisky was sold at a loss of $1750, without notice to the plaintiff of the time or place of sale, and even without notice to the defendants themselves. The plaintiff, deeming the contract rescinded, brought this action to recover the money paid. The court granted a nonsuit, on the ground that it appeared conclusively that the loss on the whisky exceeded the $1000 paid by the plaintiff. The plaintiff excepted, and on a case and exceptions moved for a new trial.

*Rowley & Miller*, for the plaintiff. The court erred in granting a nonsuit.

I. For the reason that there was no testimony on that subject amounting to evidence. The testimony of the defendant,

Reynolds, is all there is on that point. In his direct examination he assumed to have knowledge, and to testify from personal knowledge of the facts, but on his cross-examination he admits that all he knew about the matter of the sale, or the quantity of the whisky or the price—in short, all he knew on the subject—was merely hearsay information derived by letter from correspondents.

II. Granting the fact to have been proved, as assumed by the court, still the nonsuit should not have been allowed. The testimony and the fact are alike immaterial. The theory upon which the plaintiff claimed the right to recover was, that the agreement had been rescinded by the failure of the defendants to furnish the inspection returns of the whisky, according to agreement, (which was the only means of determining the quantity, and the balance to be paid by the plaintiff,) and by the subsequent sale of the whisky without notice to the plaintiff, or requiring him to pay the balance. The action was for the *money paid*, not for damages. In this view of the case it made no difference whether there was a loss or profit on the sale of the whisky by the defendants. If there had been a loss, he is not affected by it, there having been no performance, or tender or notice of the time and place of sale by the defendants. This position is fully sustained by the following cases : *Raymond et al.* v. *Bearnard*, (12 *John.* 274 ;) *Fancher & Foot* v. *Goodman*, (29 *Barb.* 315 ;) *McEachron* v. *Randles*, (34 *id.* 301 ;) *Andrews* v. *Clerke*, (3 *Bosworth*, 590 ;) *Crooks* v. *Moore*, (1 *Sandford*, 297 ;) 1 *Caines*, 46.

*W. F. Cogswell*, for the defendants. I. The plaintiff was properly nonsuited. The defendants were not in default, and could not be put in default, except by the plaintiff tendering the balance due on the whisky, and demanding the same within the thirty days, or the extended time if it was extended. (*Ketchum* v. *Evertson*, 13 *John.* 358. *Stephens* v. *Beard*,

4 *Wend.* 604. *Paige* v. *Ott,* 5 *Denio,* 406. *Lester* v. *Jewett,* 12 *Barb.* 502. *S. C.* 1 *Kern.* 453.)

II. The defendants having sold the whisky at a loss which more than absorbed the advance paid by the plaintiff, he was rightfully nonsuited for that reason.

*By the Court,* JOHNSON, J. The money, which the action is brought to recover back, was paid by the plaintiff upon an executory agreement between himself and the defendants, for the sale and delivery by the latter to the former, of one hundred barrels of western whisky, at the expiration of thirty days from the date of the payment, at the price of $1.75 per gallon. The expression in the receipt which the defendants gave for the $1000 paid, "above to be carried thirty days," must be construed to mean that the property bargained for was to be held for that period by the defendants, and then delivered to the plaintiff upon payment by him of the balance of the purchase price. The plaintiff, as the evidence on both sides shows, never paid, nor offered to pay the balance of the purchase money, and never called for the whisky. The defendants, or those who were holding the whisky for them, carried it along until some time in September, when it was sold, without any notice to the plaintiff, at a loss upon the contract price, of $1745. The $1000 was paid by the plaintiff, and the receipt taken June 25, 1864, so that the thirty days expired on the 25th of July following. So far there is no dispute about the facts. But upon the other questions of fact in the case there is a conflict in the testimony. Whether the plaintiff can recover back the money thus paid depends, as I understand the rule, entirely upon the question whether he first broke the contract, and refused to perform it on his part. If the seller, when the period for performance arrives, is ready to perform, and offers to perform on his part, and the purchaser neglects and refuses to perform on his part, either because he has not the ability, or the price of the article bargained for has declined in the market, or for any

VOL. XLVII. 37 .

other reason, the latter can not recover back the partial payments he has made in advance, or from time to time, even though the seller has afterwards disposed of the article bargained for. This principle was established in the case of *Ketchum* v. *Evertson,* (13 *John.* 358,) and is fully and clearly illustrated in the reasoning of the court. *Spencer J.* in delivering the opinion of the court in that case says : "It may be asserted with confidence that a party who has advanced money, or done an act in part performance of an agreement, and there stops short, and refuses to proceed to the ultimate conclusion of the agreement, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, has never been suffered to recover for what has been advanced or done." And he further says : "It would be an alarming doctrine to hold that the plaintiffs might violate the contract, and because they chose to do so, make their own infraction of the agreement the basis of an action for money had and received." The principles of that case have never been overruled or departed from by our courts ; but have been uniformly and constantly reasserted. and acted upon, as they will doubtless continue to be. It is needless to multiply citations of authorities to fortify so just and plain a proposition. In such a case the contract is broken and rescinded by the purchaser, and he can have no redress either to recover damages for its non-performance by the seller, or to recover back partial payments made in part performance. The seller has the right to treat the contract as at an end by the wrongful act of the purchaser, and to deal with the subject of the contract, and dispose of it, as though no bargain had ever been made, without any liability whatever to the purchaser,

But it is not every breach of contract which will amount to a rescission of it, by the party in default, so as authorize the other party to treat it as abandoned by the party so in default. If the alleged breach be not such as to amount to a rescission by the defaulting party, and the seller takes advantage of it, and disposes of the subject of the contract, to

another, without any demand or offer of performance on his part, and without notice to the other party, he may be treated as wrongfully rescinding the contract on his part; and the law will then give the other party a right of action to recover back what has been paid in part·performance. The cases of *Raymond* v. *Bearnard*, (12 *John.* 274,) and *Fancher* v. *Goodman*, (29 *Barb.* 315,) are cases of this character. In each of those cases the purchaser paid part of the purchase price in advance, and was to pay the residue and take the property at a future day specified. He did not pay nor offer to pay by the day, and the seller, without any demand or offer on his part, or any notice, sold the property to other purchasers; and this was held to be a rescission of the contract by the seller, and to give the purchaser a right of action to recover back the money advanced on the contract. It is clear from these decisions, as well as from general principles applied in other cases, that the mere neglect to perform by the day specified is not such a breach by the defaulting party as to authorize the other party to treat the contract as rescinded by such defaulting party, or abandoned. This is so in all cases where time is not necessarily of the essence of the contract. The seller, in such a case, if he wishes to have the contract either performed or abandoned, must go further, and by some demand, offer on his part, or notice, put the purchaser to his refusal to perform, before he can treat the contract as having been rescinded by the purchaser. Mere neglect to perform.by the day, generally, is not sufficient. How much, and precisely what, the seller is bound to do, before he can treat the contract as broken, to the extent of rescission, by the other party, may depend upon the peculiar terms or nature of the contract, or the circumstances attending it. It is said by Marcy, J. in *Dubois* v. *Delaware and Hudson Canal Co.* (4 *Wend.* 289,) that "there is not, perhaps, any precise rule which, when applied to the breach of a contract, certainly settles the question whether it is thereby abandoned or not; but if the act of one party be such as·necessarily to prevent

the other from performing according to the terms of his agreement, the contract may, I think, be considered as rescinded."

This case, as has been seen, turns altogether upon the question as to which of the contracting parties first broke and rescinded the contract. It is clear enough from the evidence that the subject of the agreement was sold by the defendants, or on their account, over a month after the time for final performance had passed, and at a large loss upon the contract price. .

The plaintiff, in his testimony, denies that he was ever called upon by the defendants, in any way, to take care of the whisky, or notified that they could not hold it beyond the time specified, or that it was to be sold, or any thing of the kind. If this is true, I do not see but that he is entitled to recover back the money advanced, according to the decisions before cited. He has not rescinded the contract, but it has been rescinded by the defendants, upon this state of facts. And in this view it makes no sort of difference whether they sold for less or more than the contract price. But this testimony is contradicted by the defendant, Reynolds, who testifies in substance, that whisky was declining in price in the market after the agreement, and that he notified the plaintiff, about the time that the thirty days were up, that he must take care of the whisky, and that it could not be carried beyond that time ; that the parties who held it for the defendants could not hold it longer, but must sell it. Assuming this to be the true state of the case, I am of the opinion, in view of the peculiar facts and circumstances, and especially in view of the obvious situation of the property, a jury would have the right to say that the plaintiff himself put an end to the contract. It would be a question of fact for a jury whether the defendants did what was equivalent to an offer, or notice, that they were ready and willing to perform on their part, and that unless he, the plaintiff, per-

Monroe *v.* Reynolds.

formed on his part, the property was so situated it could not be carried along, but must be sold.

It was clearly a disputed question of fact, upon the evidence, as to which party wrongfully put an end to the contract; and the right of action depended upon the very question in dispute between the witnesses, in their testimony. I do not see, therefore, how the court could properly nonsuit the plaintiff.

The question does not arise here whether the sale was made properly, in affirmance of the contract, so as to give the seller the right to recover the difference between the amount at the contract price and the amount realized by the sale. That question is not in this case. If the plaintiff rescinded the contract, the defendants had the right to sell without notice to him or any one else, the same as though no bargain had ever been made. On the other hand, if, while the contract was subsisting, and in full force, the defendants, without any offer or notice to the plaintiff, sold the whisky or caused, or allowed it to be sold, to other persons, thus rendering performance on either side impossible, the contract was broken and rescinded by them, and the action is well brought. And in such a case it is not necessary for the plaintiff to prove any tender, or offer to pay, the purchase price. (*Main* v. *King*, 8 *Barb.* 535.) As the evidence upon the material questions in this case was wholly conflicting the plaintiff should not have been nonsuited, but the case should have gone to the jury. There must therefore be a new trial, with costs to abide the event.

[MONROE GENERAL TERM, March 4, 1867. *Welles, E. Darwin Smith,* and *Johnson,* Justices.]