DAVID LEVY et al., Appellants *v.* SOLOMON LOEB et al., Respondents.

Plaintiffs employed the defendants, who were brokers, to purchase for them a specified amount of U. S. bonds, the latter agreeing to loan and advance the purchase-price. Defendants purchased in their own names the amount of bonds specified, and reported to plaintiffs' a purchase on their account at a price greater than that paid, subsequently, without knowledge of the overcharge and upon an agreement on the part of defendants to carry the original bonds purchased for plaintiffs' account to a specified date at a rate of interest agreed upon, the latter paid certain charges for commissions and alleged expenses, and also $10,000 on the purchase-price. Defendants before the time of credit expired sold the bonds purchased, without notice to, or the knowlege or assent of plaintiffs. *Held,* that upon obtaining knowledge of the facts plaintiffs were entitled to repudiate the purchase and to recover back the moneys paid.

*Gruman* v. *Smith* (81 N. Y. 25), and *Capron* v. *Thompson* (86 id. 418), distinguished.

*Levy* v. *Loeb* (15 J. & S. 61), reversed.

(Argued May 1, 1882 ; decided June 13, 1882.)

APPEAL from judgment of the General Term of the Superior Court, of the city of New York, entered upon an order made February 11, 1880, which affirmed a judgment in favor of plaintiffs' entered upon a decision of the court on trial at Special Term. (Reported below, 15 J. & S. 61.)

This action was brought to recover back moneys paid by plaintiffs under a contract for the purchase of certain United States bonds, which contract plaintiffs claimed a right to rescind because of non-performance on the part of defendants.

Defendants who where bankers and brokers were employed by plaintiffs to purchase for their account and risk, $100,000 of "United States sixes" of 1881, and the same amount of United States bonds of 1867. It was agreed that the purchase-price was

to be loaned and advanced by defendants, at a specified rate of interest, the original bonds so purchased to be held as collateral and to be carried for plaintiffs' account. The bonds of 1881 were bought by defendants in Frankfort, in their own name through agents there, on February 16, 1881. On February 18, defendants gave plaintiffs notice of a purchase on their account at a price which made the amount of the purchase $577.82, more than the actual cost of the bonds; this was explained as made up of sums paid for insurance and a charge for commissions for purchasing the bonds in Frankfort, called "courtage" which was not in fact paid. The bonds of 1867 were bought by defendants in June, 1876, they rendered an account of the purchase for $31.25 more than was actually paid. Defendants carried the bonds until March 30, 1877, at which time they rendered an account to plaintiffs, who relying thereon paid on account the sum of $10,746.74, and defendants in consideration thereof agreed to carry the original bonds until June 30, 1877, which time was afterward extended to January 2, 1878. Before that time defendants sold the bonds for their own account without the knowledge or consent of plaintiffs. On January 9, 1878, defendants demanded payment of the balance of the account with notice that upon default, the bonds would be sold the next day for account and risk of plaintiffs and on that day defendants sold the amount so purchased of similar bonds. Plaintiffs did not discover the excessive charges or the prior sale until after the last sale. Defendants set up as a counter-claim the deficiency arising on the second sale. The Special Term disallowed the counter-claim and directed judgment in favor of plaintiffs for $713.77, being the amount of the charges in excess of the sums paid on said purchases with interest. Plaintiffs appealed from that portion of the judgment which disallowed them the balance of the sum so paid by them. Defendants appealed from that portion which disallowed their counter-claim. The appeals were argued and decided separately. The case on the appeal of the defendants from judgment of General Term affirming the judgment on their appeal is reported in 85 N. Y. 365. Further facts appear in the opinion.

*Lewis Sanders* for appellants.  Plaintiffs are entitled to recover, there being a total failure of consideration.  (*Griggs* v. *Austin*, 20 Mass. 22 ; *Goodwin* v. *Gilbert*, 10 id. 510 ; *Carter* v. *Carter*, 31 id. 429 ; *Hill* v. *Rewell*, 11 Metc. 271 ; *Harrison* v. *Chilton*, 5 Gugen, 293 ; *Wheeler* v. *Beard*, 12 Johns. 364 ; *Giles* v. *Edwards*, 7 Term R. 181 ; *Richards* v. *Allen*, 17 Me. 299.)

*Will Man* for respondents.  A witness, who personally knows nothing of a transaction itself, cannot be allowed to read or testify from private books or memoranda.  (*Halsey* v. *Sinsebaugh*, 15 N. Y. 485 ; *Marcly* v. *Shults*, 29 id. 346.)

MILLER, J.   Upon the former appeal in this case this court held that the counter-claim set up by the defendants for a deficiency arising upon the sale of the bonds alleged to have been purchased by them for the plaintiffs, was properly rejected upon the ground that substantial performance was a condition precedent to the right of recovery, and that this was not shown.   It was also held that certain other bonds having been purchased by defendants under the same agreement, and the plaintiffs having been charged a commission for buying and the defendants having received a commission from the sellers, that the taking of these commissions on both sides was a breach of the contract.

The plaintiffs recovered upon the trial for two erroneous and illegal items charged to and paid by them, one of $577.82 being a charge for insurance on bonds, which had not been paid or incurred, and for commissions in purchasing bonds in Frankfort, and the other item of $31.25 being the excess of the amount paid on the last purchase of bonds, together with the interest on these several illegal sums.

Upon this appeal the plaintiffs claim that there was error in not allowing to them the sum of $10,746.74, paid by them to the defendants on the 30th day of March, 1877, upon an account rendered to them by the defendants, including the illegal items for which a recovery was had by the plaintiffs, in which account the defendants claimed $240,746.74 as due them

from the plaintiffs.    The judge found that the plaintiffs, rely-
ing upon this account as correct, which account was then stated
between the parties, paid the defendants the above-mentioned
sum, and *in consideration* thereof they agreed to carry the
original bonds for the plaintiffs to the 30th of June, 1877,
which agreement was renewed and extended until January 2,
1878, at a rate of interest which was also agreed upon.    An
additional finding was also made to the effect that the defend-
ants after the 13th day of March, 1877, and before the 2d day
of January, 1878, for their own account, without the knowl-
edge or consent of the plaintiffs, sold the whole of the original
bonds.    That the plaintiffs did not discover that the defendants
had bought the bonds at one price and charged them at an ad-
vance of $607.07, and had sold them on their own account be-
fore January 10, 1878.

In brief it appears, and in substance is found, that instead
of performing their contract of agency the defendants pur-
chased the bonds in question, in their own name at prices stated,
and then charged them to plaintiffs at higher prices, and re-
ported the purchases as made for them at those enhanced prices;
relying upon this false statement and in consideration of the
agreement to carry the bonds as above stated, plaintiffs paid
the sum called for.    No such purchases were made as reported,
and upon discovery of this fact clearly the principal was au-
thorized and justified in repudiating the fictitious transaction
reported.    It was upon this ground that the former appeal from
that portion of the judgment rejecting defendants' counter-
claim was sustained (85 N. Y. 365), and it is this which dis
tinguishes the case from *Capron* v. *Thompson* (86 N. Y. 418);
and from *Gruman* v. *Smith* (81 N. Y. 25), wherein we held
that the unauthorized sale by a broker of stock purchased and
carried on a margin was not a breach of a condition precedent
which prevented the broker from charging for the purchase of
the stock, and was not a defense to an action to recover the
purchase-price, but that he was liable in damages for the unau-
thorized sale.    Here was a failure to perform the contract of
purchase; a breach of a condition precedent.    As said by FINCH,

J., on the former appeal, " the agents instead of buying for account and risk of their principal alone, bought these bonds on their own account, at a fixed price, and held them for the principal at a larger price, and for the profit which was meant to be realized."

It is apparent from some of the findings to which reference has been had, that the defendants violated the contract of agency entered into between them and the plaintiffs; they also were chargeable with a breach of the contract by which they agreed with the plaintiff to carry the bonds for them upon the terms stated until the 2d day of January, 1878. In disregard of this condition, and before the time had arrived up to which they were to carry the bonds, the defendants as the court found disposed of the bonds. The sum of $10,746.74, was paid by the plaintiffs as a consideration of the agreement to carry the original bonds. This money was paid expressly for this purpose, and both the plaintiffs and the defendants understood that the bonds were to be retained and carried for the benefit of the plaintiffs until the time specified by the agreement, and the defendants were bound to carry the bonds as agreed. The money was paid with this object in view, and the plaintiffs then understood that the bonds were to be kept for their benefit until the period named, and the defendants agreed that this should be done. They utterly failed to perform this part of their duty, and in violation of the plaintiffs' right, without the plaintiffs' knowledge and consent, and without even notice to them exposed the bonds for sale, and sold the same. This clearly the defendants had no right to do, and this act must be regarded as a rescission of the contract by them.

Looking at the transaction in the light most favorable to the defendants, they stood in the position of vendors. Where the vendor of property, who has received a portion of the purchase-price, on agreement to hold and deliver the property to the vendee ón payment of the balance, without notice to the vendee disposes of the same, he may be treated as wrongly rescinding the contract on his part, and the vendee may maintain an action to recover the money paid in part performance of such con-

tract. (*Monroe* v. *Reynolds*, 47 Barb. 574 ; *Raymond* v. *Bear-nard*, 12 Johns. 274; *Fancher* v. *Goodman*, 29 Barb. 315.)
By the failure to perform the contract on the part of the defendants there was a total failure of the consideration paid by the plaintiffs for carrying the stock, and it became of no avail by reason of the defendants' unlawful act.    The plaintiffs lost the benefit of the time named in the disposition of the bonds, and the amount paid by them, therefore, did not prevent the defendants from making a sale in disregard of the plaintiffs' rights.    The consideration paid was received by defendants without any return for the same, and without any advantage conferred upon the plaintiffs as was intended.    As the defendants rendered no service on account of the money paid, failed to carry the bonds, and neglected to perform the obligation assumed by them, it is obvious that they are lawfully bound to refund the money thus paid them, and the plaintiffs were entitled to recover the same.

The construction we have placed upon the obligation of the defendants is also, we think, fully supported by the decision of this court on the first appeal.    As we have seen, the court rejected the defendants' counter-claim upon the ground that the contract was not substantially performed by them in any of its essential elements, and it is laid down in the opinion that they broke the contract by taking commissions on both sides and by not carrying the original bonds as agreed.    While the taking of commissions as held may of itself have constituted a breach, and on the former appeal was properly to be considered in answer to the claim of the defendants to recover a counter-claim, as there is no finding that the defendants had received such commissions, and inasmuch as the court refused so to find, the question in regard to such commissions is not now before us.    Nor is it necessary to pass upon that question, inasmuch as it already appears that the failure to carry the bonds by the defendants was a rescission of the contract which rendered them liable to refund the money.

While for the error pointed out a new trial should be granted, we think that this is not a case where the plaintiffs are entitled

to a judgment for the full amount claimed in addition to that already recovered. The entire evidence is not before us, and it is not so clear that upon another trial there may not be such a change in the testimony as will alter the aspect of the case, and under such circumstances a new trial should be had.

It is not obvious how the judgment already affirmed can stand if a new trial is granted, and we think it must be vacated by a reversal.

The judgment should therefore be reversed and a new trial granted, with costs to abide the event.

All concur, except RAPALLO, who concurs in all save the rule of damages, and ANDREWS, Ch. J., and TRACY, J., who take no part.

Judgment reversed.