RIENDEAU v. BULLOCK et al.

(*Supreme Court, General Term, Third Department.* · November 22, 1892.)

**1. SALE—WHEN TITLE PASSES.**

Plaintiff sold defendants the ice then in his ice houses, to be delivered in the following July on the latter's boats, covenanting that it should be clear, sound, and merchantable ice; and later the time for delivery was extended by mutual consent. *Held*, that the contract, though it contained the words "hereby sells," was executory, and the title to the ice remained in plaintiff.

**2. SAME—RESCISSION—WHAT CONSTITUTES.**

Defendants purchased from plaintiff ice, to be delivered on their boats in July, and subsequently, on their agreeing to pay 25 cents more per ton, plaintiff extended the time for delivery till September 1st. On August 27th plaintiff wrote defendants that he should advance the price on ice taken after September 1st, to which they replied, refusing to pay more, and telling him to sell it elsewhere. September 7th plaintiff, in answer to a message from them, telegraphed defendants that he would load the boads then loading at the agreed price, and that they could have the balance of the ice at 25 cents per ton advance. Defendants then wired him not to load any more boats, as they could not pay the advance. *Held*, that plaintiff's message of September 7th was a rescission of the contract, and defendants, having acted on it, were not liable for a refusal to receive the balance of the ice, though plaintiff subsequently offered to deliver it at the price agreed for August delivery.

Appeal from judgment on report of referee.

Action by Homedas R. Riendeau against Roselle Bullock and others to recover damages for breach of contract. From a judgment for plaintiff entered on report of a referee, defendants appeal. Reversed.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

*W. H. Dunn* and *R. Corbin*, (*Royal Corbin*, of counsel,) for appellants. *E. F. Botsford*, (*George H. Beckwith*, of counsel,) for respondent.

PUTNAM, J. By the agreement between the parties, as extended, plaintiff contracted to sell the ice contained in his two ice houses to defendant; the latter agreeing to take the same during the month of August, 1890, and to pay therefor $3.25 per ton. Although the words "hereby sell" are used in the writing between the parties, the agreement, I think, did not pass the title to the ice, but constituted an executory contract of sale. Before the title could pass, the ice had to be delivered to defendants on their canal boats, and weighed. ·The contract also contained a covenant that all ice put on defendant's boats should be good, sound, clear, merchantable ice; hence that character of ice had to be separated from the poorer quality contained in the ice houses. Therefore the title to the ice remained in the plaintiff until delivered to defendants. *Joyce* v. *Adams*, 8 N. Y. 291; *Ward* v. *Shaw*, 7 Wend. 404; *Terry* v. *Wheeler*, 25 N. Y. 525; *Uhlman* v. *Day*, 38 Hun, 300; *Anderson* v. *Read*, 106 N. Y. 333, 13 N. E. Rep. 292; *Stephens* v. *Santee*, 49 N. Y. 35. Whether a transaction amounts to an executed sale or an executory agreement to sell often depends upon the intent of the parties, appearing from the circumstances of the case. Here the facts that on account of the delay of defendants in taking the ice in July the price was raised 25 cents per ton, and that plaintiff, on account of the failure of defendants to remove the ice in August, assumed to raise the price an additional 25 cents per ton, show the understanding of the parties that the title remained in plaintiff. The defendants failed to take the ice away in the month of August, as provided in the contract as extended. On August 27, 1890, the plaintiff wrote defendants as follows: "The ice was to be all taken before 1 Sept. I have had a great loss in keeping it over to try and meet you, so my intendence is, if you take it all by. the beginning of Sept.,—say in the first ten days,—to make only 25 cents extra on whatever be taken after this month and up to the 10th Sept. Please let me know if you accept this offer." The defendants on the same day answered: "As to paying a further advance, would say the market will not stand it. We cannot get our money back as it is, and, rather

than pay an advance, would prefer after you load the boats we put in this month, that you sell it elsewhere." On September 4th defendants telegraphed to plaintiff as follows: "Please wire at once how many tons you will have, and whether you intend to load any more boats than those there now at August prices." On September 7th plaintiff answered as follows: "Will call these four at August figure, and balance 25 cents extra, providing you keep going on sending boats." On September 8th defendants answered as follows: "All right. You need not load any more boats for us, as we cannot pay the advance. Will take the four boats loaded and now on the way at August price." To which the plaintiff on the same day replied: "To meet you friendly, will load balance of ice at August price, providing you take it by the twenty instant."

The referee found "that the act of plaintiff in telegraphing defendants that they could have the balance of the ice after the four boat loads by paying 25 cents additional per ton, providing they took it by the 20th of September, amounted to the expression of an intention to refuse to deliver said balance at the August prices and under August contract." The above conclusion of the referee is sustained by the evidence in the case. I am unable to see what right plaintiff had to raise the price of ice taken in pursuance of the contract, if he desired to hold defendants thereunder. His proper course was to offer to carry out the contract, and to demand the performance thereof by defendants. He was bound to do this before he could treat the contract as rescinded. *Monroe* v. *Reynolds,* 47 Barb. 574; *Fancher* v. *Goodman,* 29 Barb. 315. When plaintiff received the telegram of September 4th he should have answered, showing his willingness to deliver the ice. He could, in his answer, have claimed that he expected to receive such damages as he might sustain on account of the delay of defendants in taking away the ice; and he could have recovered such damages. *Dayton* v. *Rowland,* 1 Daly, 446; *Dibblee* v. *Corbett,* 9 Abb. Pr. 200; *Ruff* v. *Rinaldo,* 55 N. Y. 664. But, instead of taking this course, the answer of plaintiff to defendants' telegram was, as found by the referee, a refusal to carry out the contract. It amounted to a rescission. He proposed to substitute a new contract for the ice. The defendants could legally act upon his refusal to perform the contract, and refuse to take the ice at $3.50 per ton. They were not compelled to enter into a new contract. Plaintiff having refused to deliver the ice, under the contract defendants were not bound to make formal demand, or tender or offer money to the plaintiff. *Anderson* v. *Sherwood,* 56 Barb. 66. Also plaintiff, as the referee determines, refused to deliver the balance of the ice under the contract, and the defendants, having acted upon such refusal, and sent their telegram of September 8th, were not bound to afterwards take such balance, notwithstanding the subsequent offer of the plaintiff, contained in his telegram of the same day. I conclude that on account of the declination of the plaintiff on September 7th to deliver the residue of the ice under the contract the defendants are not liable therefor. As to that portion delivered to and received by the defendants, they, having consented to take the same after plaintiff's telegram of the 7th, are liable to pay therefor. Under the contract defendants were clearly entitled to an allowance for plaintiff's failure to load the canal boats within 24 hours, as provided in the contract. The judgment should be reversed, and a new trial granted; costs to abide the event. All concur.