# P. H. HARRINGTON, Appellant, v. N. G. EGGEN and M. G. Eggen, Respondents.

## (199 N. W. 447.)

**Vendor and purchaser — default vendee seeking to recover back payments made not aided by fact that contract not canceled by vendor.**

1. Where a vendee in default under a contract for the purchase of real estate attempts to recover a portion of the purchase price paid, the action is in derogation of the contract and is not aided by the fact that the contract has not been cancelled by the vendor under § 8122, Comp. Laws of 1913, as amended by chap. 151, Laws of 1917.

**Vendor and purchaser — resale by vendor after default by vendee does not necessarily authorize latter to rescind, and thereby recover payments made.**

2. Where a vendee under a contract for the purchase of land paid part of the purchase price but had defaulted with respect to the subsequent payments and abandoned the contract, and where thereafter the vendor had resold the land to third parties, the resale does not necessarily authorize a rescission of the contract by the vendee so as to enable him to recover the payments made.

**Vendor and purchaser — land contract may be extinguished by parol; vendee's recovery under abandoned land contract limited to excess above damages sustained by vendor.**

3. A contract for the sale of land may be abandoned by the purchaser and, in effect, extinguished by parol, and when abandoned, after having made payments, his right, if any, to recover the payments is, in any event, controlled by equitable principles which would limit recovery to the excess above damages sustained by the vendor.

Opinion filed May 23, 1924.

Vendor and Purchaser, 39 Cyc. p. 1353 n. 6, 7; p. 2025 n. 56; p. 2029 n. 66; p. 2072 n. 23 New.

Appeal from the District Court of Cass County, *Englert*, J.

Note.—(1, 3) Right of vendee in contract for sale of real property to recover payments, see note in L.R.A.1918B, 540.

(2) Right of purchaser to compel return of advance payment upon resale by vendor after purchaser's default, see notes in 35 L.R.A.(N.S.) 532; L.R.A.1918B, 546; 27 R. C. L. 624.

Affirmed.

*Lyman Miller,* for appellant.

If a vendee fails to perform his contract for the purchase of real estate, various appropriate remedies are open to the vendor, and he may elect which he will pursue;

1. He may keep his tender of performance good, and may demand the balance of the purchase price and sue for specific performance.

2. He may terminate the contract because of the breach of the vendee, and he may keep his land, and sue for damages for the breach.

3. He may rescind the contract in toto. Waters v. Pearson, 144 N. W. 1026.

The vendor, by selling the property to another, exercises his option and rescinds the contract, and thereafter the parties stand as if no contract existed between them. Eaton v. Redick, 1 Neb. 305.

If, while contracts to convey were still in force, the vendor conveyed to a third person, the conveyance, if assented to by the purchaser, effected a rescission of the contracts, and such rescission was by mutual consent, entitling the purchaser to a return of the money paid under the contract. Treat v. Smith, 139 Ill. App. 262, affirmed in 234 Ill. 552, 85 N. E. 289.

Where a party under contract to sell lands to one, conveys the same without his consent to another, the original vendee is clearly entitled to regard his contract as rescinded by his vendor, and is entitled to have restored what he had paid upon the contract, subject to such deductions as equity should require. Atkinson v. Scott, 36 Mich. 18.

Where a vendor upon the purchaser's breach elects to rescind in toto, such election restores the status quo, and entitles each party to a restoration, so that the purchaser would be entitled to recover back his advance payments. Waters v. Pearson, 144 N. W. 1027; Fowler v. Johnson, 19 Ind. 207; Christy v. Arnold, 4 Ariz. 263, 36 Pac. 918; Warren v. Richmond, 53 Ill. 52; Little v. Thurston, 58 Me. 86; Smith v. Rogers, 42 Hun, 110, affirmed in 118 N. Y. 675, 23 N. E. 1146.

Where a party has contracted for land, and made payments upon it, he may recover back what he has paid, with interest, if the vendor has put it out of his power to perform his contract, by having sold the same land to another. Morton v. Tenny, 16 Ill. 492.

When the vendor, availing himself of the vendee's default, elects

to put an end to the contract, the vendee may recover back the money he has paid in part performance, with interest from the date of rescission. Eaton v. Redick, 1 Neb. 305.

Where the vendor in contract of sale of land conveys land to a third person without vendee's consent, and under such circumstances that vendee's rights are not protected, vendee may abandon contract and recover money paid. Kerr v. Reed, 179 Pac. 399; Dantzeiser v. Cook, 40 Ind. 65; Atkinson v. Scott, 36 Mich. 18; Treat v. Smith, 139 Ill. App. 262, affirmed in 234 Ill. 552, 85 N. E. 289; Fowler v. Johnson, 19 Ind. 207.

*Pierce, Tenneson, Cupler & Stambaugh,* for respondents.

"Where the time fixed or limited for the payment of the purchase money is of the essence of the contract of sale and the covenants are mutual and dependent, the purchaser must make an actual tender at or within the time fixed or limited, unless it is excused or waived, as by the vendor's refusal *before the time limited* to accept performance or tender; or unless he is prevented from making tender within such time by the vendor's neglect or default." 39 Cyc. 1565, and cases cited in notes 87 to 91.

"Where the covenants in a contract of sale are mutual and dependent, in order to put the vendor in default, it is not only necessary that the purchaser make a tender of the purchase money, but he must also demand performance by the vendor." 39 Cyc. 1567, and cases cited in notes 9 & 10.

"A failure to tender on the date fixed is not excused by a refusal of the vendor to perform *after such date.*" 39 Cyc. 1563, note 62; Hein v. Treadwell, 72 Cal. 217, 13 Pac. 503.

The complaint in order to state a cause of action must not only show a tender of performance by the plaintiff, but also a demand for performance upon the defendants. 39 Cyc. 1551, notes 67, 70, 71, 1561, notes 40 to 44, 1562, notes 57 to 60, 1563, note 67.

It is not necessary that the vendee execute a reconveyance in order to affect a rescission of the contract. Miller v. Shelburn, 15 N. D. 182.

"The vendee in a contract for the sale of lands may abandon his unperfected equitable title." Mathwig v. Ostrand (Minn.) 157 N. W. 589.

Where the purchaser is in default, the fact that the vendor resells

the property does not give the purchaser the right to recover the price paid, unless the contract has been rescinded by the vendor. 39 Cyc. 2029, notes 66, 67.

Before a purchaser of real estate who has made partial payment on the price can repudiate and recover the sum paid if no question of fraud or misrepresentation is involved, he must show that the vendor is unable or unwilling to perform, or has committed some act warranting rescission. Burton v. Ryther (S. D.) 161 N. W. 350.

A vendee, who defaults in the payments due under such a contract and announces his inability to perform the same, is not entitled, unless the contract so provides, to a return of a payment made when the contract was entered into; nor has the court, in the absence of a statute to that effect, authority in equity to require a return of the money by the vendor as a condition to a cancellation of the contract. Nelson Real Estate Agency v. Seeman, 180 N. W. 227.

Where by laches the remedy at law under contract for the conveyance of land is barred, and the right to specific performance forfeited, there can be no recovery of what has been paid on the contract of purchase. 39 Cyc. 2031, note 75.

BIRDZELL, J. This is an appeal from a judgment entered in the district court of Cass county in an action brought to recover certain payments made under a contract for the purchase of land. At the conclusion of the testimony both parties moved for a directed verdict, whereupon the trial court made findings of fact and conclusions of law and an order for judgment, in pursuance of which a judgment was entered dismissing the plaintiff's action. There is no statement of the case and the appeal is on the judgment roll.

The findings of fact may be summarized as follows: The defendants M. G. and N. G. Eggen were, in severalty, on July 11, 1919, the owners each of a half section of land in Cass county and were in possession of the same. On that date they agreed to sell the land to the plaintiff for $67,500 payable as follows: $2,000 cash; $3,000 on or about November 1, 1919, without interest; $20,000 on March 1, 1920; $30,-000 in ten years at 6 per cent annual interest, secured by first mortgage, and $12,500 in annual installments of $1,250 each, payable on the first of March annually, beginning in 1921, with 6 per cent inter-

est, secured by second mortgage. The $2,000 cash payment was made, and the $3,000 payment due November 1, 1919, was not paid by plaintiff but by one Paul E. Simmons who became interested with the plaintiff in the purchase of the land, which payment was made on December 27, 1919. It was agreed between the plaintiff and Simmons that one half of the purchase price of the lands would be paid to each of the defendants who would execute separate deeds and each of the defendants would receive $2,500 of the payments so made. On or about November 1, 1919, the defendants executed warranty deeds to the lands agreed to be conveyed, in which the plaintiff was grantee, which deeds were deposited with the Scandinavian American Bank of Fargo for delivery to the plaintiff upon performance of the conditions of the contract, and on or about February 2, 1920, the defendants delivered to the plaintiff's agent and to Simmons abstracts of title to the land, showing good, merchantable title in the defendants, which abstracts were likewise delivered to the Scandinavian American Bank to accompany the warranty deeds. On March 1, 1920, the defendants tendered the deeds and abstracts to the plaintiff and offered to deliver the same upon the payment of $20,000 and the execution of the mortgages for the balance of the purchase price, and demanded that plaintiff perform the contract on his part, and the tender was maintained by the defendants who, on numerous occasions subsequent to March 1st, offered to deliver the deeds and abstracts on the conditions stated and demanded performance by plaintiff. The plaintiff failed, neglected and refused to perform and he is and at all times since March 1, 1920, has been in default under his contract. On or before April 12, 1920, the plaintiff, through his agent the Amerland Company or Simmons, stated to the defendants that he, the plaintiff, was not financially able to perform said contract or to take possession of and farm the land, and that the plaintiff abandoned the contract and any rights he had therein or in the land. The plaintiff was not, on March 1, 1920, or at any time thereafter, ready and willing to perform the conditions of the contract and never offered to perform. During the year 1919 the market for farm lands such as the defendants' was brisk and values inflated over normal times, but by March 1, 1920, the values of farm lands in general and of the defendants' farm had dropped. Since March 1, 1920, the market had become more depressed and dull, and the plaintiff was

unable to resell the land and would have sustained a loss if he had performed the conditions of the contract. He refused and still refuses to take title to the land or to perform the conditions of the contract, and he is financially irresponsible and unable to make the payment of $20,000. He has failed to pay the taxes on the lands commencing with taxes for the year 1919 and has never offered to do so. After the plaintiff had abandoned the contract the defendants, with the knowledge and consent of the plaintiff, farmed the land under a lease with the tenant then in possession. After the abandonment of the contract 'and in reliance thereon, each of the defendants, one in February, 1921, and the other in December, 1922, sold and conveyed the tract owned by him. By reason of the failure of the plaintiff to perform, the defendants have been damaged in an amount largely in excess of the plaintiff's claim in this action. Subsequent to the making of the contract in question and prior to March 1, 1920, the defendants declined a bona fide offer of $116 per acre for their land, owing to the existence of the contract with the plaintiff under which they were obliged to convey to him at $108 per acre. The value of the land on March 1, 1920, did not exceed $100 per acre, and the depression in land values continued thereafter, and subsequent to March 1, 1920, the value was much less than $100 per acre. The defendants never notified the plaintiff that they would not perform the contract; they at no time repudiated or refused to perform the contract and were at all times ready, willing and able and, in fact, offered to perform.

From these findings the court drew conclusions of law to the effect that the plaintiff had no cause of action to recover damages for any alleged breach of contract and no cause on the theory of a rescission of the contract and no right to recover the payments made thereon; that the plaintiff had sustained no loss by reason of his failure to carry out the contract, but on the contrary was benefited and the defendants damaged because of the depression and drop in land values since March 1, 1920; that long prior to the conveyance of the lands by the defendants to third parties, the plaintiff abandoned his contract and waived his right, if any, to recover from the defendants the payments made; that he is now estopped from maintaining this action or asserting any claim or rights by virtue of the contract; that the defendants are entitled to counterclaim or offset against the claims and demands of the

plaintiff, the damages sustained by them by reason of the breach of the contract on the part of the plaintiff, and that such damages exceed the amount of the claims and demands of the plaintiff, and that the plaintiff is not entitled to recover any amount from the defendants or either of them; that the action should be dismissed with prejudice and with costs to the defendants.

The appellant concedes that he is bound by the court's finding to the effect that he wholly failed to carry out his covenants and agreements under the contract, except as to the two payments aggregating $5,000, but he points out that, owing to his default, it became the right of the vendors (the defendants) to cancel the contract by giving the six months' notice for which the statute provides, and that there is no finding to the effect that a notice in compliance with the statute was ever served upon the vendee. From the absence of such finding and from the further affirmative finding that the defendants did later sell and transfer their lands to third parties for a consideration not appearing, the argument is made that the appellant (the vendee) is justified in treating the contract as rescinded, and, hence, as having the right to recover the amounts paid thereunder. We cannot state the question in more concise terms than the appellant's counsel has done. He states it thus: "The question involved here is  .  .  .  under a contract for the sale of real estate where there has been a default by the vendee, after having made payments upon the contract, and where there has been no compliance with the statute with reference to cancellation of such contract, and the vendor voluntarily puts it out of his power by selling or disposing of the land to third parties, can the vendor retain the payments previously made upon such contract?" The plaintiff places reliance upon that part of the statute, § 8122, which says that "No provision in any contract for the purchase of land, or an interest in land, shall be construed to obviate the necessity of giving the aforesaid notice, and no contract shall terminate until such notice is given, any provision in such contract to the contrary notwithstanding." (To like effect, see the amendment, chapter 151, Laws of 1917.)

The right claimed by the plaintiff here does not rest upon the contract but is in derogation of it. It presupposes a rescission of the contract. At the same time we are unable to see wherein the defendants' right to retain the payments made, if they have such right, is dependent

upon the cancellation of the contract. We are not in this action concerned with any interest the plaintiff might have acquired in the land; we cannot adjudicate his equities, if any. Neither are we concerned with any liability the defendants may have sustained by reason of having defeated, through conveyance, the plaintiff's equity, if any he had. In our opinion, therefore, it is immaterial whether or not the defendants have cancelled the contract under § 8122 of the Compiled Laws for 1913, as amended by chapter 151 of the Laws of 1917.

The principal contention of the appellant is that, inasmuch as the defendants have sold the land, they must be regarded as having acted upon the plaintiff's breach by exercising their option to rescind the contract, and, in that event, to have elected to place the plaintiff in the same position he would have occupied if the contract had been rescinded by mutual assent. From this there would arise the obligation to refund the money paid. It will be seen that this contention is grounded upon the proposition that the sale of the property to third parties necessarily implies assent to the rescission of the uncancelled contract. Stated in other words, the sale of the property precludes the vendor from asserting rights under the contract previously broken by the vendee and authorizes the latter, though in default, to treat the contract as rescinded and to recover whatever benefit had been previously conferred upon the vendor. Such a proposition negatives the legal possibility of the resale being regarded as an equivocal act.

The vendor, in fact, reasonably might have acted upon the purchaser's repudiation of the contract, retained the property as his own and sold it as such, intending to hold the first purchaser to the consequences of his breach of the contract by charging him with the difference between the contract price of the property and the value at the time of the breach. This was his clear legal right, and it is difficult to see how its exercise in good faith can be made the basis of an affirmative action against the injured party simply on account of the fact of his having sold as his own property which he had retained as such. On the other hand, following the mere failure of the vendee to make a payment under the contract, the vendor might have made the resale to defeat the equity of the vendee in the property. In this event the resale might properly be taken to authorize a rescission of the contract and a recovery of the consideration previously paid in an action sub-

ject to the control of equitable principles. But it is manifest that to permit rescission where the resale was made in the circumstances first stated would be contrary to the real intention of the injured party and would superimpose a remedy which is not required to effect justice. Indeed, it would permit one who has broken his contract to reap advantages to which he is not justly entitled, while imposing upon the injured party a restraint in dealing with his own property to his own advantage. We are of the opinion that a resale by the vendor does not necessarily entitle the defaulting vendee to rescind and recover the payments made.

On this subject, Williston on Contracts, vol. 2, § 791, says:

". . . Some decisions hold that the buyer though in default may recover the instalments which he has paid, less such an amount that will make the seller whole. Any other rule obviously permits a forfeiture. Nevertheless the great majority of American decisions deny the buyer relief. And it may be said that this is no more than the necessary result of default by a party who has previously partly performed his contract. Frequently there is an express provision for forfeiture.

"It is difficult to see why such a provision should affect the question since the buyer's right of return, if he ever has such a right, is given him by law necessarily in opposition to the terms of the contract. But some courts doubtless would make the buyer's right to recover depend upon the absence of such a provision. In New York if the seller sells the property on default by the buyer without notice to the latter, he may treat the sale as an absolute wrongful rescission, and the seller must restore any instalments received. It may be inferred from the decisions that if the seller does give proper notice the buyer could not recover instalments. Fancher v. Goodman, 29 Barb. 315; Levy v. Loeb, 89 N. Y. 386."

In the well reasoned opinion of the supreme court of Pennsylvania, in the case of Sanders v. Brock, 230 Pa. 609, 35 L.R.A. (N.S.) 532, 79. Atl. 772, where the facts are strikingly parallel with those in the instant case, the principles involved are discussed as follows:

"The plaintiff contends that the defendant, the vendor, by reselling the property rescinded the contract, and that ex aequo et bono he is entitled to have refunded the part of the purchase money which was paid on the agreement. It is upon this ground that he claims that an

action for money had and received will lie. It may be conceded that if the defendant rescinded the agreement, expressly or impliedly, he can derive no benefit directly or indirectly from it, and should place the plaintiff in statu quo by returning the purchase money received from him."

After pointing out that the defendant had complied fully with the agreement and tendered a deed conveying good title, that he did not sell the property until the plaintiff had without good cause violated the agreement, refused to take the title and pay the purchase money, the opinion proceeds:

"Could the defendant under the circumstances at any time sell the property without being liable to the plaintiff for the purchase money paid by him? Must he forever continue to hold the property to await the offer and convenience of the purchaser, giving the latter an opportunity to complete the purchase if the property advanced in price or refuse it if its value diminished, and in the meantime subject the vendor to the risk of a loss possibly imperiling his financial standing? The law imposes no such unreasonable requirement on a party who has in good faith kept and offered to perform the stipulations of his contract. He has done his duty, and the defaulting party is not in a position to make demands of him which might subject him to financial losses. Under such circumstances, the vendor has the right to accept as final the positive refusal of the purchaser to complete the sale and take the property. This is a rescission of the contract which under no principle of law or equity can be invoked in behalf of or in aid of the party at fault. . . . This action is based on an implied contract to refund the money. The implication must arise from equitable considerations. Such action can be maintained if the vendor rescinds the agreement. He has no right in equity to refuse to carry out his part of the contract and at the same time require performance by the other party or retain what has been paid him under the terms of the contract. If he has received the purchase money, equity will compel him to refund if he declines to convey the premises. Here, however, the vendor did not rescind the agreement or refuse to convey the property, but tendered a deed and insisted upon the purchaser accepting the title, which he has positively and at all times declined. The facts here,

therefore, do not raise an equity in favor of the purchaser which will support an action."

· It was likewise recognized that, where the vendor had, in effect, rescinded the agreement, or where there had been a mutual rescission, recovery might be had subject to the equitable principles which govern quasi-contractual remedies. Authorities to this effect will be found cited in the opinion, and in the note in 35 L.R.A.(N.S.) 532. Among the cases cited is Ketchum v. Evertson, 13 Johns, 359, 7 Am. Dec. 384, in which the court says (pp. 364, 365):

"It would be an alarming doctrine to hold that the plaintiffs might violate the contract, and, because they chose to do so, make their own infraction of the agreement the basis of an action for money had and received. . . . The defendant's subsequent sale of the land does not alter the case; the plaintiffs had not only abandoned the possession, but expressly refused to proceed, and renounced the contract. To say that the subsequent sale of the land gives a right to the plaintiffs to recover back the money paid on the contract would, in effect, be saying that the defendant could never sell it without subjecting himself to an action by the plaintiffs. Why should he not sell? The plaintiffs renounced the contract and peremptorily refused to fulfil it; it was in vain, therefore, to keep the land for them. The plaintiffs cannot by their own wrongful act impose upon the defendant the necessity of retaining property which his exigencies may require him to sell; this would be most unreasonable and unjust, and is not sanctioned by any principle of law."

In this jurisdiction it is established that the statutory remedy for the cancellation of a land contract by notice is not exclusive, Nelson v. McCue, 37 N. D. 183, 163 N. W. 724, and that, in an equitable action involving the title, a party in default may not be in a position to be relieved of the default and secure performance of the contract within the period given by the statute. Furthermore, it is likewise established that such a contract may be abandoned and, in effect, extinguished by parol. Mahon v. Leech, 11 N. D. 181, 90 N. W. 807; Wadge v. Kittleson, 12 N. D. 452, 97 N. W. 856; Helgebye v. Dammen, 13 N. D. 167, 100 N. W. 245; Ottow v. Friese, 20 N. D. 86, 126 N. W. 503. It would seem to be elementary that where such a contract has been abandoned by a purchaser, after having made certain payments,

51 N. D.—7.

his right to recover any portion of the price paid is necessarily controlled by equitable principles which would preclude a recovery in a situation where the vendor has sustained a loss in excess of payments made. In these circumstances the vendor would not be *unjustly* enriched to the extent of the payments made. In this case the findings are to the effect that the contract was abandoned by the plaintiff before the property was resold by the vendor. Also, that through the plaintiff's breach of the contract and failure to perform it, the defendants sustained a loss in excess of the payments previously made. Inasmuch as the evidence is not before us for review, these findings must be deemed to be supported.

The judgment is affirmed.

BRONSON, Ch. J., and NUESSLE, JOHNSON, and CHRISTIANSON, JJ., concur.