Lawrence SABOT, Plaintiff and Appellant,

v.

John RYKOWSKY, Jr., and Betty L. Rykowsky, Defendants and Appellees.

Civ. No. 10720.

Supreme Court of North Dakota.

March 13, 1985.

Calvin Hoovestol, Bismarck, for plaintiff and appellant.

R. Russell Mather of Fleck, Mather, Strutz & Mayer, Bismarck, for defendants and appellees.

VANDE WALLE, Justice.

On August 12, 1977, John and Betty Rykowsky entered into a contract for deed with Lawrence Sabot to purchase 42 acres of rural property at $1,750 per acre, for a total price of $73,500. The parties simultaneously executed an option agreement on an adjacent tract of land, again with a stated purchase price of $1,750 per acre. Although Sabot deeded three five-acre tracts to the Rykowskys and they made several payments, the parties' actions were not in conformity with the written contracts. The trial court found that prior to October 24, 1979, Sabot had deeded fifteen acres to the Rykowskys, five acres from the contract for deed property and ten acres from the option contract property, and that as of October 24, 1979, the Rykowskys owed $5,500 on the purchase price of the fifteen acres. The court further found that the Rykowskys were in default on the contract for deed and that the option contract had expired.

John Rykowsky testified that Sabot contacted him in June of 1980 and offered him a credit of $7,500 if the Rykowskys would give up whatever rights they had in the land. The Rykowskys assert that they accepted this offer and physically delivered the contract for deed to Sabot. The trial court found that such a transfer had occurred and that the parties had thereby mutually agreed to terminate the contract for deed. The court concluded that the $5,500 balance had been "forgiven" by Sabot. The court entered judgment in favor of Sabot foreclosing the Rykowskys' interest in the land which had not been deeded to them, but did not award damages to Sabot. Sabot has appealed from the judgment.

The dispositive issue [1] on appeal is whether the parties to a contract for deed for the sale of land may orally terminate the contract. Sabot contends that enforcement of the parties' oral agreement to terminate the contract for deed is precluded by the statute of frauds.

Pursuant to Section 9–06–04, N.D. C.C., our codification of the statute of frauds, an agreement for the sale of real property or an interest therein is invalid unless the contract or some memorandum thereof is in writing. Nevertheless, it is well settled in this State that the mutual rights and obligations of the parties to a written contract for the purchase and sale of real estate may be waived, and the contract annulled and extinguished, by oral agreement. *Raasch v. Goulet,* 57 N.D. 674, 223 N.W. 808 (1929), *overruled on other grounds by Ziebarth v. Kalenze,* 238 N.W.2d 261 (N.D.1976); *C.A. Finch Lumber Co. v. Weishaar,* 55 N.D. 695, 215 N.W. 155 (1927); *Harrington v. Eggen,* 51 N.D. 87, 199 N.W. 447 (1924); *Ottow v. Friese,* 20 N.D. 86, 126 N.W. 503 (1910); *Hougen v. Skjervheim,* 13 N.D. 616, 102 N.W. 311 (1905); *Wadge v. Kittleson,* 12 N.D. 452, 97 N.W. 856 (1903); *Mahon v. Leech,* 11 N.D. 181, 90 N.W. 807 (1902). The rationale underlying these decisions is that there is no reconveyance when the contract is annulled. In *Ottow v. Friese, supra,* 20 N.D. at 95, 126 N.W. at 507, we stated: "Under the decisions of this court, such contracts may be abandoned and forfeited in that way [orally], and the title remains in the grantor without any conveyance from the person abandoning the land and the con-

---

1. Although Sabot has raised two additional issues in his brief on appeal, our disposition of the statute of frauds issue is determinative of the outcome of the appeal. We also note that Sabot's counsel conceded at oral argument that the trial court's findings of fact were supported by the record and were not clearly erroneous. Rule 52(a), N.D.R.Civ.P.

tract." Although *Ottow, supra,* was an abandonment case, the same rationale is applicable when the parties have mutually agreed to terminate the contract.

In this case the parties agreed to terminate the contract with respect to the remaining acreage which had not yet been deeded to the Rykowskys. Title at all times remained in Sabot, and the annullment of the contract did not constitute a reconveyance from the Rykowskys to Sabot. There was no reconveyance of the land which had been deeded by Sabot to the Rykowskys, and the effect of the oral agreement was merely a relinquishment of whatever remaining rights and obligations the parties may have had under the contract for deed.

This subject is discussed in 4 W. Jaeger, *Williston on Contracts* § 592, at 207–210 (3d ed. 1961):

> "If an executory contract is within the Statute of Frauds and is in writing or a proper written memorandum has at some time been made, a subsequent oral agreement to rescind the contract is effectual if the oral agreement fulfills the requisites of a contract at common law. The Statute of Frauds does not mention contracts of rescission or discharge and such contracts are, therefore, not affected by its terms. It should be clear, however, that, if a contract has been partly executed by the transfer of title to either real or personal property, an agreement of rescission which contemplates not simply a discharge of unexecuted obligations but a retransfer of the property must be within the section of the Statute relating to sales of land or that relating to sales of goods." [Footnotes omitted.]

The oral agreement in this case contemplated only a discharge of unexecuted obligations, *not* a retransfer of the property already deeded to the Rykowskys.

The result which we reach is in accord with the modern trend of authority. For example, Section 148 of the *Restatement of Contracts, Second,* provides:

> "§ 148. Rescission by Oral Agreement

> "Notwithstanding the Statute of Frauds, all unperformed duties under an enforceable contract may be discharged by an oral agreement of rescission. The Statute may, however, apply to a contract to rescind a transfer of property."

Although the *Restatement* indicates that the statute of frauds *may* apply to a contract to rescind a transfer of property, Comment *c* to Section 148 makes it clear that the prevailing rule is that an executory land contract may be orally terminated:

> "*c. Land contracts; right to specific performance.* Where land has been transferred by an effective deed, an agreement to rescind the transaction is a contract for the transfer of an interest in land within the Statute of Frauds. The same rule has sometimes been applied to executory land contracts which were enforceable by virtue of a memorandum or of action in reliance, on the ground that a specifically enforceable contract creates an equitable property interest in the purchaser. But the reasoning is circular: if the rule of the first sentence of this Section is applied, an oral contract to rescind is a defense to an action for specific enforcement of the executory contract, and there is no equitable property interest. *The prevailing rule is that an executory land contract may be rescinded orally like other contracts within the Statute, even though enforceable....*" [Emphasis added.]

Other authorities also support our conclusion that the statute of frauds does not apply to an oral agreement to terminate a contract for the sale of land. See, e.g., *Lucenti v. Cayuga Apartments, Inc.,* 59 A.D.2d 438, 400 N.Y.S.2d 194 (1977); *Strychalski v. Mekus,* 54 A.D.2d 1068, 388 N.Y.S.2d 969 (1976); *Dan Bunn, Inc. v. Brown,* 285 Or. 131, 590 P.2d 209 (1979). For a collection of cases addressing the issue, see Annot., 42 A.L.R.3d 242 (1972).

We adhere to the rule announced in the earlier decisions of this court. The statute of frauds does not prohibit enforcement of the oral agreement between Sabot and the

Rykowskys to terminate the contract for deed.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., and PEDERSON, Surrogate Justice, concur.

GIERKE, J., disqualified himself subsequent to argument.

PEDERSON, Surrogate Justice, participated.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this court at the time this case was submitted; MESCHKE and LEVINE, JJ., not being members at that time, did not participate.