DAVID LEVY et al., Appellants, v. SOLOMON LOEB et al., Respondents.

Plaintiffs employed defendants, who were brokers, to buy "for their account and risk," a specified amount of United States bonds. It was agreed between them that defendants should loan and advance the purchase-price at a specified rate of interest and carry the original bonds purchased, holding them as collateral. Defendants purchased the amount of bonds specified, not as agents, however, but in their own names; they reported to plaintiffs a purchase on their account, but at a price greater than that paid. Before the maturity of the loan, defendants sold the bonds purchased, on their own account, without the knowledge or assent of plaintiffs. Plaintiffs made a payment on account of the supposed loan; at its maturity they were called upon to pay, and notified that in case of default, they would be sold out; not having paid, other bonds of a like amount were sold. In an action brought to repudiate the alleged purchase, and to recover back the money paid, defendants set up a counter-claim for the deficiency arising on such sale. *Held*, that said counter-claim was properly rejected; that substantial performance of their contract was a condition precedent to defendants' right of recovery, while the facts showed that it was not performed in any of its essential elements.

Certain other bonds were purchased by defendants, under the same agreement; they charged plaintiffs a commission for buying, and received from the sellers a commission for selling. *Held*, that the taking of these commissions from both sides was a breach of the contract.

*It seems* that if there had been no express agreement to carry the identical bonds purchased, defendants would have been required to show that they kept on hand ready for delivery on demand a like amount of similar bonds.

(Argued May 4, 1881; decided May 31, 1881.)

APPEAL from order of the General Term of the Superior Court of the city of New York, made December 30, 1880, which reversed a judgment in favor of plaintiffs, entered upon a decision of the court, on trial without a jury.

This action was brought to repudiate a purchase of bonds, claimed by defendants to have been made for plaintiffs, be- cause of alleged breach of contract, and to recover back moneys paid by plaintiffs under the contract in alleged ignorance of the non-performance by defendants.

The material facts are stated in the opinion.

*Lewis Sanders* for appellants. A recovery by defendants, without proof that they were ready, able and willing to perform their contract, and that they carried the original bonds to January 2, 1878, cannot be had. (*Bigelow* v. *Morgan*, 47 N. Y. 318 ; *Nelson* v. *Plimpton F. P. E. Co.*, 55 id. 484.) De- fendants having violated their contracts of agency as to both lots of bonds, by charging a profit to plaintiffs in addition to their commissions, and by taking an unlawful commission from the sellers, plaintiffs could elect to avoid or repudiate the con- tract. (10 Ch. App. Cas. 526 ; *Whited* v. *Germania F. Ins. Co.*, 76 N. Y. 421 ; Story on Agency [8th ed.], § 210 ; Kerr's Fraud and Mistake [Bump's notes], 348 ; Adams' Equity, marg. p. 184 [6th Am. ed.] ; Bispham's Principles of Equity, § 94 ; *Bentley* v. *Craven*, 18 Beav. 75 ; *Davoe* v. *Fanning*, 2 Johns. Ch. 268 ; *The York Building Co.* v. *Mackenzie & Bro.*, P. C. 42 ; *Jackson* v. *Van Dolsen*, 5 Johns. 48, notes ; *Tyrrel* v. *Bk. of London*, 10 H. of L. C. 52 ; *Bentley* v. *Craven*, 18 Beav. 75 ; Willard's Eq. Juris. 606–607.) Defendant could not act as agent for both parties without their knowledge. (*Everhart* v. *Searle*, 71 Penn. St. 259 ; *Farnsworth* v. *Hemmer*, 1 Allen, 494 ; *Parker* v. *McKenna*, L. R., 10 Ch. App. Cas. 116 ; *Duryee* v. *Lester*, 75 N. Y. 444 ; Dunlap's Paley's Agency, 33, note 3 ; Story on Agency, § 211 [8th ed.] ; *Wright* v. *Dannah*, 2 Camp. 203 ; *Dixon* v. *Broomfield*, 2 Chitty, 205 ; *Copeland* v. *Mercantile Ins. Co.*, 6 Peck, 204 ; *Florence* v. *Adams*, 2 Rob. [La.] 556 ; *N. Y. Cent. Ins. Co.* v. *Nat.*

*Prot. Ins. Co.*, 14 N. Y. 91.) Plaintiffs were entitled to re-
cover the full amount paid to defendants for carrying these
bonds, because defendants sold them in violation of the con-
tract. (*Grigg* v. *Austin*, 20 Mass. 22; *Goodwin* v. *Gilbert*,
10 id. 510; *Carter* v. *Carter*, 31 id. 429; *Hill* v. *Rewee*, 11
Metc. 271; *Harrison* v. *Chilton*, 5 Ga. 293; *Wheeler* v. *Board*,
12 Johns. 364; *Giles* v. *Edwards*, 7 Term, 181; *Richards* v.
*Allen*, 17 Me. 299.) Defendants were bound under their con-
tract to carry the identical bonds agreed to be purchased.
(*Burrall* v. *Bush. R. R. Co.*, 75 N. Y. 211; *Nourse* v. *Prime*,
4 Johns. Ch. 496–497; id. 86–87; *Allen* v. *Dykers*, 3 Hill.
598; *Dykers* v. *Allen*, 7 id. 501; *Peckham* v. *Ketchum*, 5
Bosw. 506; *Horton* v. *Morgan*, 19 N. Y. 173; *Stewart* v.
*Drake*, 46 id. 452; *Baker* v. *Drake*, 66 id. 523; *Marston*
v. *Gould*, 69 id. 226; Story on Bailments, § 339; Redfield
on Carriers and Bailments, § 659; Edwards on Bailments, 37,
188.) A demand of performance of an illegal condition dis-
penses with a formal demand for performance by the other
party. (*Rider* v. *Pond*, 19 N. Y. 267.) Where conditions are
concurrent, one party seeking to charge the other on the con-
tract must first put him in default. (*Lester* v. *Jewett*, 11 N.
Y. 456; *Callenonei* v. *Briggs*, 1 Salk. 112; *Dunham* v.
*Mann*, 4 Seld. 513.)

*Will. Man* for respondents. The defendants were not
bound, under the circumstances of this case, to keep on hand
for plaintiffs the identical bonds which were bought when
plaintiffs gave the orders to buy. (*Nourse* v. *Prime*, 4 Johns.
Ch. 489; id. 7; id. 69; *Stewart* v. *Drake*, 46 N. Y. 451;
*Horton* v. *Morgan*, 18 id. 170.) A conversion of the collateral
security by the pledgee does not prevent his recovery of what
is due him, but only entitles the pledgor to offset or recoup
his damage. (*Gruman* v. *Smith*, 9 Reporter, No. 23, p. 748.)

FINCH, J. The contract between these parties was primarily
one of agency. The defendants were bankers and brokers, and
were employed by the plaintiffs to buy " for their account and

risk," $100,000 of United States sixes of 1881, and the same amount of bonds of 1867. The purchase-price was to be advanced by the defendants and take the form of a loan, upon which interest at four per cent was to be charged and allowed, the bonds meanwhile being held as collateral to the loan, but to be carried by the defendants for plaintiffs' account.

The bonds of 1881 were bought in Frankfort. They were purchased by the defendants in their own name and paid for by them. As between them and the vendors abroad, there was no claim or trace of agency, but a sale to the defendants directly. The title to the bonds, their ownership and possession, passed to the bankers making the purchase, so completely and perfectly, that the latter could, as they in fact afterward did, transfer to others the identical bonds thus bought, by a valid and absolute title. The purchase was made on the 16th and 17th of February, 1876, in part by Goldschmidt & Risdorff, and in part by the Deutsche Vereins banks, acting for and on account of defendants, and in obedience to a telegram requesting such purchase. On the 18th of February, and while the bonds were just started upon their transfer from Frankfort, the defendants gave the plaintiffs written notice that the former had bought for the latter and for their account and risk, $50,000 of the 1881$^s$, at 123⅝, and $50,000, at 123¾, to be carried at four per cent per annum. As matter of fact the statement was not true. The Special Term found that the real and actual cost of the bonds was less than the price represented and charged, by the sum of $577.82, which last sum was explained as made up of 1691.65 reich marks charged for insurance, which had not been paid or incurred; and a charge for commissions for purchasing the bonds in Frankfort, called "courtage," which amounted to 205 reich marks more. It is apparent, therefore, that the agents, instead of buying for the account and risk of their principal alone, bought these bonds on their own account at a fixed price, and held them for the principals at a larger price and for a profit which was meant to be realized; the latter supposing the defendants to be acting wholly for their benefit and in their interest as such principals.

The agent employed to buy undertook to transfer the bonds to the principal at a profit beyond their cost, concealing the truth of the transaction from the latter.   This phase of the purchase and sale is not modified by the suggestion, very urgently pressed upon our attention, that no particular or identical bonds were intended on either side, but only so much of the National debt of the government, without reference to the numbers or identity of the bonds.   Whatever was bought on the one hand and transferred on the other was in that view only more clearly property bought by the defendants, and put upon the plaintiffs at a profit, without a suspicion on the part of the latter that the defendants were acting in their own interest, rather than as disinterested and faithful agents.

Something equally questionable in its nature, though more trifling in amount, took place in the purchase of the bonds of 1867. · They were bought in June, 1876, of Fisk & Hatch by the defendants, who charged their principals with a commission for buying, and received also from the seller a commission of $31.25 for selling.   The agent for the buyer was also agent for the seller, and took commissions from both sides with impartial confidence in the propriety of so doing.

The purchase having been made the bonds were to be "carried" by the defendants for an interest, at first, of four per cent.   It is found as a fact by the Special Term that they "agreed to carry the original bonds purchased for the plaintiffs' account." There is evidence to sustain this finding.   The written notification given by the defendants was of a purchase at a particular date for plaintiffs' account and risk.   The latter swear that they applied for the numbers of the bonds, and give the reasons why their identity was important.   There is dispute on the subject, but we must be concluded by the finding, more especially since it is not excepted to by the defendants, nor is there any request to find the contrary.   The original bonds, bought in Frankfort, and of Fisk & Hatch, were not carried in pursuance of the agreement.   It is found that, before the maturity of the loan, and while the contract to carry was in force, the

defendants for their own account, without the knowledge and consent of plaintiffs, sold the whole lot of original bonds.

There is abundant evidence to justify this conclusion, and it must be taken as a fact in the case. It is entirely inconsistent with the theory and argument of the defendants, that so long as they kept on hand an amount of government bonds, of the issues in question, ready for delivery upon demand, it mattered not that the identical bonds were gone. It is, perhaps, necessary to concede that ordinarily, and in the absence of any special agreement, the identical bonds need not be retained. It has been so held as to stocks. (*Taussig* v. *Hart*, 58 N. Y. 425.) It is not easy to see why the same rule must not be applied to government bonds. But here it is found and certified to us as a fact that the parties themselves agreed that the original bonds should be carried. It was competent for them to make such an agreement, and we cannot ignore it or substitute something else in its place. If we could disregard the stipulation to carry the original bonds, and say that it was enough to have others on hand ready for delivery, a further difficulty would arise out of the refusal of the trial judge to find any such fact. The defendants, it is true, testified to it, but their cross-examination made their statement somewhat doubtful and uncertain. Their books of account were produced and, it it claimed, showed more bonds due from defendants than they had in their possession. Those books are not here. We do not know their contents. We cannot say that the Special Term erred in its refusal to find the fact requested. In any event, therefore we seem to be compelled to take it as a fact that the agreement to carry the bonds was not performed.

Of these facts the plaintiffs were kept in ignorance. Some time after the alleged purchase an account was rendered to them of the transaction, in which they were treated as the owners of the bonds, and credited with coupons collected, and upon which they paid something more than $10,000. In this account were involved all the improper charges originally made, including six per cent of additional interest for the period between the shipment of the bonds from Frankfort and their ar-

rival in New York, making for that space of time an interest of ten per cent instead of the four per cent agreed upon for carrying. At the maturity of the loan the plaintiffs were called upon to pay the alleged indebtedness, or to be sold out. The amount demanded included the excess charged over the cost. The original bonds were long before sold, but the pretense of their being held and carried was still kept up. The defendants' letter speaks of a delivery of the bonds " which we have been carrying at your request." Their attorney's letter notifies the plaintiffs that " the bonds held as collateral will be sold in default of payment." When the sale took place, other and substituted bonds were sold; a vicarious sale to demonstrate a deficiency, which was thus established to a large amount.

But at this point came discovery and resistance. The plaintiffs brought their action to repudiate the alleged purchase and recover back the money paid upon it, and the defendants set up a counter-claim for the deficiency and claimed judgment therefor. At Special Term the counter-claim was rejected and the plaintiffs allowed to recover only the amount of the excessive charges over cost. But the General Term reversed the decision upon the ground that the counter-claim was improperly rejected. The latter is the sole question presented on this appeal, for the right of plaintiffs to the items embraced in their recovery was conceded by the defendants' requests to find, and is admitted in the argument here as being proper corrections of the account. Were the defendants, therefore, entitled to recover their counter-claim? Substantial performance of their contract by them was a condition precedent to their right of recovery. The contract was not merely for the loan of so much money. That was but a single element in an entire and much broader agreement. The defendants were to buy the bonds as agents of the plaintiffs. They were to make the purchase in that capacity, with the skill and ability which their business and experience indicated and in entire good faith to their clients, without any adverse or hostile interest; and the identical bonds thus bought they agreed to carry, advancing the money for that purpose, and holding the bonds as collateral. That

contract, the findings of the learned judge at Special Term show, was not performed by the defendants in any of its essential elements. They did not buy for their clients in good faith as agents, but on the contrary, buying, without disclosing their agency, sought to transfer the bonds to the plaintiffs at a larger price, concealing the profit intended to be realized. They broke their contract by taking commissions from both sides. They broke it again by not carrying the original bonds as agreed, and the deficiency upon which they rely sprang from a sale of their own bonds and not plaintiffs'. Not only was there thus a total failure to perform on the part of defendants, but it is entirely possible that the sale which they did make of the original bonds bought in Frankfort, and of Fisk & Hatch, brought their full cost and left no deficiency. The defendants choose not to disclose either the date or terms of that sale. Doing so they cannot sell their own bonds at a sacrifice and claim that deficiency of the plaintiffs. The rule might be otherwise if the defendants had not specially agreed to carry the original bonds. It is that fact, as found by the trial judge, which is fatal to the counter-claim alleged. The agreements were mutual and the acts to be done concurrent. Since no directions to sell the bonds were given by plaintiffs, upon the expiration of the contract by the lapse of the stipulated time, it was the duty of the defendants to deliver the original bonds which had been carried, at the price actually and in truth paid for them, and the duty concurrently of plaintiffs to pay that price with the interest. The defendants, therefore, could not put the plaintiffs in default without a tender of performance, or at least proof of a readiness and willingness to perform. (*Nelson* v. *Plimpton Fireproof*; *E. Co.*, 55 N. Y. 484; 2 Pars. on Cont. 676, 677.) No such proof was given. No bonds were tendered. The original bonds could not be, since the brokers had sold them by their own unauthorized act, and rendered their delivery impossible. They did not even offer similar bonds at the price actually paid, but demanded a greater one. There was no element of performance or readiness to perform in the case. Not a single

stipulation of the contract was fairly and in good faith ful-
filled, and no valid counter-claim was established.

The theory of the defendants, if dissected to the bone, would
perhaps disclose only the skeleton of a bet or wager upon the
future price of government bonds of the issues specified.  In
consideration of four per cent, called interest, the defendants
were to deliver, within an agreed period, the bonds indicated,
upon demand.  If they rose the plaintiffs would win and defend-
ants would lose.  If they fell the result would be reversed.
We do not deem it necessary, however, to consider this interpre-
tation of the contract which the appellant insists is the necessary
result of the defendants' construction of it.  Treating it as un-
objectionable in the respect alleged it is yet very clear that there
was a substantial failure of performance on the part of defend-
ants, and no proof of a deficiency for which the plaintiffs were
liable.

It follows that the order of the General Term should be re-
versed and the judgment of the Special Term affirmed, with
costs.

All concur, except FOLGER, Ch. J., absent, and EARL, J., dis-
senting.

Order reversed and judgment affirmed.