EDWIN G. THOMPSON, Appellant, Respondent, *v.* SAMUEL H. EASTON and CHARLES T. EASTON, Respondents, Appellants.

*Contract to deliver plants in one year if the party can, otherwise the next year, construed — a refusal to accept the plants, based upon one ground, is a waiver of other objections — a demand or willingness to receive the plants is necessary to establish a default.*

June 5, 1897, Samuel H. Easton entered into a contract in writing by which he agreed to pay Edwin G. Thompson the sum of $300 in the following manner: "To raise raspberry tips or plants and deliver to said Thompson at the wholesale price of such plants an amount to the value of $300 in the year first above written (1897), if he can; but if he cannot from any cause raise them in that year sufficient to amount to that sum, then he shall have the privilege of time in the subsequent year or years to do so. Said plants to be delivered on the premises of said S. H. Easton. And the said Edwin Thompson agrees to take of said S. H. Easton raspberry tips or plants to the value of three hundred dollars, to be delivered to him on the said S. H. Easton's premises." The contract was guaranteed by Charles T. Easton in the following language: "I guarantee that the plants or tips mentioned in the within article be delivered in good marketable condition."

*Held,* that the proper construction of the contract was that Samuel H. Easton was to deliver the raspberry tips at the proper season during the year 1897, but that if, on account of causes over which said Easton had no control, the plants were not of sufficient growth to be marketable in the fall of 1897, he could deliver them in the spring of 1898, providing they were then marketable, and that Thompson would be obliged to accept such delivery;

That Thompson's refusal to accept a tender of the raspberry tips made in the spring of 1898 upon the sole ground that they should have been delivered in the year 1897 operated as a waiver of all other objections to the tender;

That Thompson could not maintain an action to recover upon the note and guaranty without proving that he had made a demand for the plants or that he was ready and willing to receive such plants upon Easton's premises.

CROSS-APPEALS by the plaintiff, Edwin G. Thompson, and by the defendants, Samuel H. Easton and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 10th day of December, 1900, upon the decision of the court rendered after a trial at the Onondaga Trial Term, a jury having been waived.

*George Barrow* for the plaintiff.

*F. E. Stone,* for the defendants.

DAVY, J.:

On the 5th day of June, 1897, the defendant Samuel H. Easton entered into a contract in writing with the plaintiff Edwin G. Thompson, which provides " that in consideration of the surrender of all the claims that the said Edwin Thompson or his wife may have against Albert H. Easton, viz., notes, judgments, mortgages or claims of any kind whatsoever, the said S. H. Easton agrees to pay to the said Edwin Thompson the sum of three hundred dollars in the following manner, viz. : To raise raspberry tips or plants and deliver to said Thompson at the wholesale price of such plants an amount to the value of $300 in the year first above written (1897), if he can; but if he cannot from any cause raise them in that year sufficient to amount to that sum, then he shall have the privilege of time in the subsequent year or years to do so. Said plants to be delivered on the premises of said S. H. Easton. And the said Edwin Thompson agrees to take of said S. H. Easton raspberry tips or plants to the value of three hundred dollars, to be delivered to him on the said S. H. Easton's premises." This contract was guaranteed by the defendant Charles T. Easton in the language following : " I guarantee that the plants or tips mentioned in the within article be delivered in good marketable condition."

The plaintiff thereafter, according to the terms of said contract and within the time therein mentioned, released the mortgages and judgments held by him and his wife against Albert H. Easton.

The plaintiff claims that inasmuch as there were some plants raised in 1897 and not tendered by defendant Samuel H. Easton, he is in default on the contract and is liable for the whole $300.

The defendants' contention is : *First,* that the contract being

payable in raspberry tips or plants, to be grown after the contract was made, that a demand for the tips or plants should have been alleged and proved upon the trial before an action for the money can be maintained. *Second,* that by the express terms of the contract, the defendant Samuel H. Easton was to raise the tips or plants in the year 1897, if he could; but in case they did not mature and were not ready to be delivered, he might continue to cultivate and deliver them in the succeeding year or years. *Third,* that before the commencement of this action, and in March, 1898, the defendant tendered full performance of the contract and a delivery of all plants called for by the contract, which plaintiff refused.

The intention of the parties, when ascertained, must control in this case as in others involving the construction of written contracts.

The determination of this appeal, therefore, involves the construction or the interpretation of said agreement made between the plaintiff and the defendant Samuel H. Easton. The contract imports upon its face a complete expression of what the parties agreed upon, and there is no ambiguity in its construction. The plants were to be delivered to the plaintiff on the premises of the defendant Samuel H. Easton, and the plaintiff agreed to receive them at that place. These were to be concurrent acts, and if the defendant did not raise enough marketable plants to amount to $300 in the year 1897, then he was to have the subsequent year or years to deliver them.

The contract was made in June, 1897, and there is no dispute but that the defendant cultivated and made every effort to grow the tips ready for the plaintiff in that year, but the season was dry and the tips, which are the shoots of the plants, bent down and imbedded in the earth, did not root and there were not sufficient marketable tips or plants to fill the contract. It also appears that by the following spring these tips had grown and developed into marketable plants sufficiently to fill the contract, and in March, 1898, they were duly tendered to the plaintiff and refused.

The plaintiff did not ask, demand or express any desire for the plants in the year 1897, and the fair inference to be drawn from the evidence and the conduct of the plaintiff is that he did not desire to have the plants delivered to him in that year.

It appears from the undisputed evidence that the plaintiff, in October, 1897, called on Charles Mills, who had been engaged in the nursery business for thirty-five years, and consulted him with reference to raspberry tips or plants, and the method of selling them, and Mills informed him that tips planted in the fall were too tender to handle, and that they were not old enough; that they should be kept in the ground until spring, for the reason that the roots should have a chance to grow; that plants that are small in the fall will grow considerably in the early spring and be ready by the first of May to make good, salable plants. He said that the plaintiff spoke to him about the quantity of plants that he had purchased of the defendant Easton, how he came to purchase them, and he told him that the orders for the sale of plants should be taken during the winter, as dealers desired to know in advance what to depend upon. Mr. William H. Ford, who was also engaged in the nursery business and had been for twenty-five years, saw some of these plants that were dug in the fall of 1897, and he testified that they were of an inferior quality; that they had no roots to speak of; that they were young and tender and in handling them they would break off. The defendant Samuel H. Easton testified that at the time the agreement was made the plants were hardly out of the ground and the tips had not been bent down; that the field where they were growing was in bad condition and full of quack; that after the agreement was made he had them cultivated, and that he did not finish putting the tips in the ground until the fifteenth of September; that they could not be tipped any earlier on account of the very dry weather; that the drought continued until the middle of October; that they did not grow any until the latter part of October on account of the lack of moisture in the ground, and that there was not any time in the fall of 1897 when $300 worth of marketable plants or tips could have been delivered; that the plaintiff never asked him for these plants or tips, or any part of them, or intimated that he was ready to receive them; that in the spring of 1898 the defendant informed the plaintiff that he was ready to deliver the plants and the plaintiff refused to take them, and the defendant reset the plants in April or May and has kept them in readiness for the plaintiff whenever he might demand them.

There is nothing in the evidence or in the conduct of this defend-

ant that showed any intention to rescind or abandon the contract on his part or to authorize the plaintiff to do so. There is no evidence of unreasonable delay. It is often a matter of great difficulty to ascertain the character of contracts in relation to their being dependent or independent, and a solution of the difficulty must be sought in the intentions of the contracting parties to be gathered from the terms or language used by them in their contract.

A fair and reasonable construction of the agreement is that the defendant Samuel H. Easton was to deliver in the year 1897, on his premises, $300 worth of raspberry tips or plants at the proper season of the year for digging and shipping raspberry plants, but if the plants were not of sufficient growth to be marketable in the fall on account of natural or other causes, over which said defendant had no control, then none were to be delivered to the plaintiff in that year, and said defendant could in the spring of 1898, if the plants were marketable, deliver them, and the plaintiff would, under his contract, be bound to take them.

The growing of the plants until they were marketable was a condition precedent to the delivery, and it seems to us that the evidence that these raspberry tips or plants were not of sufficient growth to be marketable in the fall of 1897 is so overwhelming that if the defendant had dug them at that time and notified the plaintiff that they were ready for delivery he could not have been compelled, under the contract, to accept them and the plants would have been an entire loss to the defendant.

It must be conceded that the defendant acted in good faith and diligently tried to raise and have the plants ready for delivery as soon as possible, and when the plants were of sufficient growth to be marketable he went to the plaintiff and tendered the requisite number to fill the contract. The plaintiff then refused to take them, not on the ground that they were not marketable, or that they had depreciated in value, but for the reason that under the contract they should have been delivered in the year 1897, and, therefore, he was not compelled to take them.

Upon well-settled principles this was a waiver of all other objections to the tender, and if he was mistaken in his construction of the contract, the tender was good and is a bar to this suit. (*Buck* v. *Burk*, 18 N. Y. 341; *Gould* v. *Banks*, 8 Wend. 562.)

To entitle the plaintiff to recover for the breach of the agreement he must first show a performance or an offer to perform on his part.

The attendance of the plaintiff at the place of delivery was necessary to enable the defendant to deliver the plants.

The defendants could not put the plaintiff in default without performance or at least proof of readiness and willingness to deliver the plants at the place called for by the contract. Neither could the plaintiff put the defendant in default without proof of demand or readiness and willingness to receive the plants on defendant's premises. This the plaintiff did not do. No such proof was given and no demand was made for the plants.

In *Ziehen* v. *Smith* (148 N. Y. 561) Judge O'BRIEN, in speaking for the court, says: "The general rule, however, to be deduced from an examination of the leading authorities seems to be that in cases where by the terms of the contract the acts of the parties are to be concurrent, it is the duty of him who seeks to maintain an action for a breach of the contract, either by way of damages for the non-performance, or for the recovery of money paid thereon, not only to be ready and willing to perform on his part, but he must demand performance from the other party." (*Hartley* v. *James,* 50 N. Y. 42; *Nelson* v. *Plimpton Fire-Proof E. Co.,* 55 id. 480; *Levy* v. *Burgess,* 64 id. 394; *Lawrence* v. *Miller,* 86 id. 137; *Levy* v. *Loeb,* 85 id. 372; *Eddy* v. *Davis,* 116 id. 247; *Ewing* v. *Wightman,* 167 id. 110.)

The defendant was unable to deliver to the plaintiff $300 worth of marketable plants or tips in the year 1897; the contract, therefore, was not broken, and plaintiff cannot maintain this action.

The judgment should be reversed and a new trial granted, with costs to the defendants to abide the event.

McLENNAN, SPRING and WILLIAMS, JJ., concurred; HISCOCK, J., not sitting.

Judgment reversed and new trial ordered, with costs to the defendants to abide event.