M. ARTHUR HELFHAT, Respondent, v. J. NORMAN WHITE-HOUSE et al., Copartners, under the Firm Name of WHITEHOUSE & Co., Appellants.

(Argued December 3, 1931; decided January 5, 1932.)

*Thomas G. Prioleau* and *Robert W. Bernard* for appellants. The exclusion by the trial court from the evidence of the written contract between the parties, wherein plaintiff agreed that all transactions for his account were subject to the rules and customs of the New York Stock Exchange and its clearing house, constitutes reversible error. (*Koehler* v. *New York Steam Co.*, 183 N. Y. 1; *Horton* v. *Morgan*, 19 N. Y. 170.)

*Michael M. Helfgott* for respondent. The agreement between plaintiff and defendants which governed their relationship of customer and broker was properly excluded. (*Gettin* v. *Boyle*, 184 App. Div. 499; *Dunham* v. *Cudlipp*, 94 N. Y. 129; *Decker* v. *Mathews*, 12 N. Y. 313; *McCarthy* v. *Heiselman*, 140 App. Div. 240; *Paltey* v. *Egan*, 200 N. Y. 83.)

LEHMAN, J. The defendants are stockbrokers and members of the Stock Exchange. In February, 1928, they held 1,000 shares of Warner-Quinlan Oil Company stock for plaintiff's account. They gave one E. H. Stern a "stop loss" order to sell this stock when it fell to a certain price. Stern was a "specialist" in that stock. Stern notified the defendants that the stock was sold in accordance with the stop loss order, and the defendants in turn notified the plaintiff. He objected to the sale and then brought this action, alleging in his complaint that his stock was "held and carried, under and pursuant to an agreement that * * * said defendants * * * would hold and carry the same, subject to the plaintiff's direction as to the sale and disposition thereof, as long as plaintiff should desire, and would not sell or dispose of the same unless plaintiff's margin should become exhausted and insufficient, and not then, unless plaintiff should fail to comply with their demand of plaintiff that he should give further security or margin." All this the defendants admitted in their answer but they denied the further allegations of the complaint that "without calling on plaintiff for any additional margins * * * [they] wrongfully sold or pretended to sell the 1,000 shares of Warner-Quinlan stock, and misapplied the proceeds of said sale, and wrongfully converted them to their own use," and the defendants affirmatively alleged that the "stock had been sold by defendants at the special instance and request of plaintiff on February 17, 1928, * * * pursuant to the directions of plaintiff and under certain so-called stop loss orders theretofore duly given and placed by plaintiff with defendants and that defendants in making the sale * * * were acting in strict compliance with the express orders and directions of the plaintiff."

The issues raised by the answer to the complaint were brought to trial. If there could be doubt as to what these issues were, the plaintiff's counsel in his opening

statement gave practical construction to the allegations of the complaint. Though in the complaint sale or "pretended sale" are alleged in the alternative, the basis of the cause of action pleaded is that in either event the action of the defendants was illegal because authority from the plaintiff was lacking either for a sale or a pretended sale. Indeed in his opening, plaintiff's counsel repeatedly said that the sales were made, and added that when the sales were made, they were properly "put back on the sales of the day before. That is all right. That had to be done." The wrong was, so he said, that the sales were made without authority. That alleged wrong the defendants denied, and that issue was litigated by the parties at the trial.

The same issue had been litigated at a previous trial. Then the jury found in favor of the plaintiff, but the Appellate Division set aside the verdict on the ground that it was against the weight of evidence (231 App. Div. 701). At the second trial the trial judge refused to submit that issue to the jury, but directed a judgment in favor of the plaintiff on the ground that it then conclusively appeared that the "specialist" employed by the defendants to sell the stock was the sub-agent of the defendants to carry out the plaintiff's orders; that the specialist sold the stock to himself and that a sale so made is not a sale but a conversion of the stock for which the defendants are responsible.

The evidence upon that point was admitted as an incident to the trial of the issues defined in the pleadings as construed by the parties both at the earlier trial and in their opening here. That evidence shows that the order to sell was given by the defendants to a specialist named Stern; that the defendants so informed the plaintiff. He testified that one of the defendants said that Stern was the only "specialist" in the Warner-Quinlan stock; that all brokers who received orders from customers to buy or sell executed their orders through him. The

plaintiff promptly received a formal notice of the sales which stated that the stock was "sold to E. H. Stern."

The plaintiff never protested that a pretended sale by a specialist to himself constituted a conversion of the stock. Not until the close of the second trial did he raise such objection. His counsel urges in his brief that the plaintiff had obviously failed to notice that the purchaser named in the sales notice and the specialist who made the sale were the same. That may be true, but it emphasizes the fact that the complaint was never intended or understood to allege a cause of action based upon a pretended sale by an agent to himself. The defendants never were apprised that they were called upon to meet such a cause of action until after both sides had rested, and then they were told that it was too late to interpose any defense to such a cause of action or to controvert the proof presented.

A party charged with a wrong is entitled to notice of the charge and opportunity to defend. The pleadings may be disregarded, the notice may be waived, if the parties choose to litigate at the trial an issue not raised by the pleadings. Then pleadings may be amended to conform to the proof. Perhaps the rule that judgment must be in accordance with the allegations contained in the pleadings does not apply when the evidence, though admitted to prove these allegations, shows beyond dispute that a party is responsible for a wrong which is not alleged, and that further opportunity to defend would be futile and a source only of delay and injustice. Where it appears that the trial has been adequate for the presentation of all relevant testimony, technicalities may be disregarded. The courts are administered to promote the search for the truth; when that is accomplished, all else may be immaterial. The pleadings may not be amended, enlarged or restricted in a manner which deprives a party of opportunity to litigate a substantial question.

That has been done here. The defendants maintain that by agreement of the parties, sales were to be made in accordance with the rules of the Stock Exchange. We must assume that to be true. Evidence to show that such was the agreement of the parties was offered, and excluded over the exception of the defendants as immaterial. The rules of the Stock Exchange were not offered in evidence. They were not relevant to the issues that the defendants litigated at the trial, though perhaps they might be relevant upon the new charge on which recovery was actually based.

We are not informed of the nature of the " specialist's " functions. The parties and the court apparently understood that he is a broker to whom orders are given regularly by other brokers for execution in a particular stock which he watches continuously. He has been described as a " member designated by the exchange to keep the record of outstanding bids for and offers of that stock." (Meyer on the Law of Stockbrokers and Stock Exchanges, p. 487.)

The contract between a broker and his customer is primarily one of agency. (*Levy* v. *Loeb*, 85 N. Y. 365.) As agent the broker must actually execute his customer's orders to buy or sell. (*Hurd* v. *Taylor*, 181 N. Y. 231.) He may not offset one customer's order to sell against another customer's order to buy by mere bookkeeping entries. (*Haight* v. *Haight & Freese Co.*, 112 App. Div. 475, affd., 190 N. Y. 540.) It has been held, nevertheless, that where a broker sells as agent for one customer to himself as agent for another customer, in accordance with the rules and customs of the exchange, the sale is binding upon both customers. (*Hall* v. *Paine*, 224 Mass. 62.) Indeed where all orders to buy and sell a particular stock are executed through one specialist in that stock, it is difficult to see how sales can be made otherwise. In such case the courts will give effect to the rule if they find it is fair and not opposed to public policy; and in the same

case in which the Massachusetts court held that a rule was valid though it permitted a broker to make a contract of purchase and sale as agent for both buyer and seller, it held invalid and against public policy a rule that a broker might as agent sell to or buy from himself as principal, at least where it was not shown that the customer knew of that particular custom or usage. (See, also, *Robinson* v. *Mollett*, [L. R.] 7 English & Irish Appeals [H. L.], 802; *Irwin* v. *Williar*, 110 U. S. 499.)

Where a broker executes an order through a sub-agent called a floor broker or specialist, the sub-agent is ordinarily under the same restrictions as the original broker and the principal may repudiate the contract made in his behalf where the floor broker purchases for himself the stock which he was directed to sell. (See *Evans* v. *Wrenn*, 93 App. Div. 346; affd., 181 N. Y. 566, though that ruling was not subject to review upon the appeal taken by the plaintiff.) If there is a rule or custom of the exchange which permits the specialist to purchase for his own account under any circumstances, it would to that extent transform the specialist into an independent dealer rather than a subagent, and change the ordinary rule that the original broker must execute orders received from his customer by purchase and sale on the floor of the exchange. Here, as we have said, we are not informed by record or briefs whether such a rule exists or, if it exists, of its limitations, or whether the conditions under which the rule was intended to operate existed, or whether the plaintiff knew of such rule. We cannot say that if such rule exists it would not contravene public policy or would constitute an answer to a charge of conversion, but manifestly the defendants should have had the opportunity to have the courts pass upon such questions. Moreover, though the notice to the plaintiff states that the stock was sold to the specialist, we are not informed whether that form of notice is used only when the specialist buys for his own account or when he acts as agent for

both buyer and seller. Perhaps we might assume that it is used only where the specialist purchases for himself stock which he has been directed to sell. Even then the question would remain whether the plaintiff after receiving such notice, as well as information of the name of the specialist to whom the order to sell had been given, was not chargeable with knowledge that the sale had been made by the specialist for himself and whether failure to object promptly did not preclude him from belated repudiation. The vice of the judgment is that the defendants have been deprived of their day in court in which such questions might be presented.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event. (See 258 N. Y. 608.)

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.