THE MARINE TRUST COMPANY OF BUFFALO, Appellant, *v.* GEORGE E. WILLIS, Respondent.

Fourth Department, January 24, 1934.

*Kenefick, Cooke, Mitchell, Bass & Letchworth [Thomas R. Wheeler* of counsel], for the appellant.

*Donovan, Raichle & Randal [Frank G. Raichle* and *J. C. Randal* of counsel], for the respondent.

CROSBY, J. Although the answer does not specifically allege a fraud committed upon defendant, the issue of fraud was fully litigated and submitted to the jury without objection being taken that the issue of fraud was outside the pleadings. Under these circumstances we may disregard the omission in the answer to plead fraud. (*Helfhat* v. *Whitehouse,* 258 N. Y. 274, 278; *Sampson* v. *Pels Co.,* 199 App. Div. 854; Civ. Prac. Act, § 434.)

Defendant seeks to be relieved from liability on his accommodation indorsement on a $40,000 note given by Willoughby to plaintiff on October 29, 1929. The main basis of his claim is that certain collateral, deposited by Willoughby to secure the note, was exchanged for other collateral, and the latter collateral taken to secure a later unindorsed note given by Willoughby to plaintiff for $7,000. The $7,000 note was given by Willoughby to plaintiff on May 3, 1930. Previously to that, and on April 8, 1930, certain collateral, securing the $40,000 note, was sold for $8,438.50, which entire amount was immediately credited on the $40,000 note which defendant had indorsed.

Defendant, having received the full benefit of this collateral, can have no complaint that plaintiff thereafter loaned Willoughby $7,000 on his unindorsed note and took for collateral to that note the very stocks which the $7,000 was used to buy. And defendant can have no complaint that payments which Willoughby thereafter made to plaintiff were, by the latter, credited to the $7,000 unsecured note rather than to the note on which defendant was indorser, for the reason that Willoughby made no requests as to the application of the payments, and defendant, the indorser, neither directly nor indirectly advanced any of the payments.

The only complaint that defendant can have arises out of a finding of the jury (which, for the purposes of this decision, we are assuming is justified by the evidence) that defendant was misled by plaintiff into a belief that Willoughby's payments were being applied to the reduction of the $40,000 note which defendant had indorsed, when, as a fact, they were being applied on the $7,000 note. At the most this damaged defendant only to the extent to which payments were applied to the $7,000 note which defendant was led by plaintiff to believe were applied to the note on which defendant was liable, and only relieved him *pro tanto* from his liability as an indorser. (*Vose* v. *Florida R. R. Co.*, 50 N. Y. 369.)

That case points out the distinction between cases where a creditor does something to change the original contract between himself and the principal debtor to the prejudice of a surety, and cases where the securities for the debt were meddled with to the damage of the surety. Our instant case falls in the latter category, and the surety or indorser is only discharged *pro tanto*.

To be sure, defendant testified that, had he known of the $7,000 note of Willoughby, and had he known that Willoughby's payments were being credited on that note rather than on the $40,000 note, he would have taken up the latter note and closed out the collateral which would have realized enough to discharge the note and save the defendant from loss. Objection was made to that testimony, and an exception was duly taken. It is true that sometimes a state of mind may be proven as a fact in issue, as when, in an action for deceit, a plaintiff swears that he believed defendant's misstatements and relied and acted on them. But for a party to speculate as to what he would have done had he known certain facts is but to give an opinion which is not evidence.

Relying upon this improper evidence the jury has been permitted to find that defendant has been damaged to the full extent of the note which he indorsed, and has relieved him from his entire liability, without any definite evidence on which to base a finding of just how much defendant was really damaged.

We can discover no theory on which defendant can be said to have been damaged more than the aggregate of all the payments made and credited on the $7,000 note, together with interest on the several payments from their respective dates. If defendant was at sometime deceived by plaintiff as to the application of the payments, he will be made good for all his damage by having the payments now credited in the manner in which he was led to believe they were credited. Beyond that he was not damaged.

Plaintiff's only motion for a directed verdict was one for a verdict for the full amount demanded in the complaint. In reversing the judgment we cannot grant the motion for a direction of the verdict, as it still remains for a jury to determine the damage to which defendant is entitled as an offset to his liability on the note in question.

We do not think defendant has any cause for complaint by reason of the so-called extension of the Sterling land contract. That was not an extension of the time of payment of the note which defendant indorsed, but only an extension on one of the collateral securities given to secure that note. Under defendant's agreement, printed on the note in question, plaintiff could have surrendered the Sterling land contract altogether.

The judgment should be reversed on the law, on the grounds and for the reasons stated herein, and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment reversed on the law and a new trial granted, with costs to the appellant to abide the event.